JACKSON, <i>ex dem.</i> MERRIT, <i>against</i> TERRY.

THIS was an action of ejectment, for the recovery of part of lot No. 82., in the town of *Homer.* The cause was tried before Mr. Justice *Spencer,* at the last *Courtlandt* circuit.

At the trial, the plaintiff gave in evidence a deed in fee for the premises in question, from *Archibald Turner* to *James Turner,* for the consideration of four hundred dollars, dated the 24th *Sept.* 1804, which was duly acknowledged on the same day, and recorded in the proper office, *May* 23d, 1805 ; also, a deed in fee from *James Turner* to the lessor of the plaintiff, dated *April* 9th, 1806, for the consideration of 450 dollars, which was duly acknowledged on the same day, and recorded in the proper office, *May* 28th, 1806.

The defendant gave in evidence a judgment recovered in

*Where land is conveyed between the rendering and docketing a judgment against the vendor, to a purchaser who has notice of the judgment, with intent to elude the judgment creditor, such conveyance is void, as against the creditor.*

*A sheriff's deed for lands in the military tract, must be recorded: and if after land has been sold on execution, and a conveyance made by the sheriff, and before such conveyance is recorded, the*

former proprietor conveys it to a *bona fide* purchaser, for a valuable consideration, who has his deed first recorded, such subsequent purchaser will gain a priority.

A special return upon an execution, even if sufficient to pass a title to the land, (which, it seems, it is not,) must in order to give the purchaser under the execution a priority, be recorded.

the court of common pleas of the county of *Onondaga*, against *Archibald Turner*, at the suit of one *Hubbard.* The *capias.* in that suit was returnable on the 4th *Tuesday* in *May*, 1804 ; judgment was given on the 4th *Tuesday* of *September* following, for 99 dollars 67 cents, and was docketed on the 10th of *January*, 1805. A *fi. fa.* was issued thereon, returnable in *January*, 1805, under which *Archibald Turner's* right to the lot No. 82., in *Homer*, was sold to one *Wood*, by the sheriff of *Onondaga*, who executed a deed to *Wood*, dated the 10th of *April*, 1805, for the consideration of 89 dollars and 90 cents, which was acknowledged and recorded in the proper office, on the 9th of *July*, 1806. The *fi. fa.* before mentioned was filed in the proper office, on the 25th of *Sept.* 1805, with a special return thereon, that the sheriff had sold all the right and title which *Archibald Turner* had to fifty acres of No. 82., in *Homer*, (being the same that *Turner* lived on,) *April* the 9th, 1805, to *Wood*, the highest bidder. A witness on the part of the defendant testified, that shortly after judgment was given in favour of *Hubbard*, against *Archibald Turner*, in *September*, 1804, *Archibald Turner*, in the presence and hearing of *James Turner*, inquired of the witness if *Hubbard* had obtained a judgment against him, and the witness, in the hearing of *James Turner*, informed him that judgment had been obtained against him, *Archibald Turner;* that on the same day, *Archibald Turner* executed the deed before mentioned to *James Turner*, to which deed the witness on the trial was a subscribing witness. The witness saw no money paid, nor obligation executed, by the grantee, nor did he hear the parties say anything respecting payment of the consideration expressed in the deed. *James Turner* was in very poor circumstances, and unable, as the witness stated, to pay 400 dollars, and *Archibald Turner* continued in possession of the premises, after the execution of the conveyance, until 1807, when he went away, and left his family, and his family continued to reside on the land for some time after. *Archibald Turner* was in possession of the land when the lessor of the plaintiff purchased it, but a witness on the part of the plaintiff testified, that he was present in the spring of 1806, when *Archibald Turner* hired the land of the lessor of the plaintiff, for one year, upon shares. There was some very slight evidence on the part of the plaintiff, to show that a consideration actually passed between *Archibald* and *James Turner*, and the defendant attempted to prove that the

consideration, on the purchase by the lessor of the plaintiff was paid to *Archibald Turner ;* but a witness on the part of the plaintiff testified, that he was present when the lessor of the plaintiff purchased the land, who gave *James Turner* about 70 dollars in cash, a waggon, harness, and a pair of horses, and notes for the balance, which were made payable to *James Turner.*

A verdict was taken for the plaintiff, subject to the opinion of the court on the above case.

*Sabin,* for the plaintiff.

*Cady,* contra.

THOMPSON, Ch. J., delivered the opinion of the court. From the evidence in this case, it is manifest that, as between *Archibald* and *James Turner,* a gross fraud was intended. The sale was made for the express purpose of avoiding the judgment of *Hubbard* against *Archibald Turner.* But there is no evidence that the lessor of the plaintiff was, in any manner, privy to such fraud. He appears to have been a *bona fide* purchaser from *James Turner,* without any knowledge of the fraud between him and *Archibald,* and, of course, he is not to be prejudiced by it. The right between these parties will, therefore, depend upon the question, whether, under the act for registering deeds and conveyances, relating to the military bounty lands, (1 *N. R. L.* 209.,) a deed from the sheriff, upon a sale under an execution, is necessary to be recorded. The judgment, under which the defendant derives his title, was docketed, the sale made, and execution returned, and filed, and a deed given, before the deed, from *James Turner* to the lessor of the plaintiff, but the latter deed was first recorded ; so, that if the act applies to such sales, the deed to the lessor of the plaintiff has priority. The act declares, that all deeds or conveyances, of, or concerning, or whereby any of the said lands may be any way affected, in law or equity, shall be recorded; and that every deed, or conveyance, of such land, shall be adjudged fraudulent and void against any subsequent purchaser, for valuable consideration, unless the same be recorded before the recording of the deed or conveyance under which such subsequent purchaser shall claim.

In the case of *Simonds* v. *Catlin,* (2 *Caines' Rep.* 61.,) it was

decided by this court, that the estate of a defendant did not pass at a sheriff's sale without a deed or note in writing, to be signed by the sheriff; and reference is there made to this very statute, and the precise case now before the court stated, to show the evil that would result from considering the title as passing by the sale without a deed; and it seemed there to be assumed, as the clear construction of the statute, that a sheriff's deed, as well as any other, must be recorded. There is no good reason why it should not be so. The object of the statute was, to enable purchasers to ascertain the validity of the title, and to determine whether they could purchase with safety; and the law refers them to the record, for this purpose.

If the sheriff's sale is to defeat the purchaser, he would, in vain, seek for the evidence of the title. And if it should be admitted, as was urged upon the argument, that the return on the execution might be so special as to supercede the necessity of a deed, it would not dispense with the necessity of having it recorded. This return would then be the evidence of title; and ought to be considered as falling within the reason of the act; it would be an instrument by which the lands would be affected; and all such are to be recorded, or deemed void against subsequent *bona fide* deeds duly recorded. But although in the case of *Simonds* v. *Catlin*, it is said, that on a sheriff's sale of land, a deed, or note in writing, signed by the sheriff, is necessary to pass the title, a return endorsed on the execution never has, as yet, been considered, by this court, as sufficient for that purpose. Upon the whole, therefore, we think it will best comport with the reason and policy of the statute, as it certainly does with the letter, to extend it to sheriff's deeds as well as to others. The deed to the lessor of the plaintiff, having been first recorded, is entitled to priority. Judgment must, accordingly, be entered for the plaintiff.

Judgment for the plaintiff.