ROBERTS v. The YUBA. See Cases Nos. 18,-192 and 18,193.

ROBERTS, The MARY BELLE. See Case No. 9,200.

## Case No. 11,921.

### Ex parte ROBERTSON.

[1 N. Y. Leg. Obs. 20; 5 Law Rep. 321.] [1]

Circuit Court, S. D. New York. Aug. 15, 1842.

BANKRUPTCY—SCHEDULE OF ASSETS—PREFERRED CREDITORS—OPPOSITION TO DISCHARGE.

1. The bankrupt is only bound to set forth in his schedule such property as he has a right or interest in at the time of petitioning; but if property, or the right or interest thereto or therein, have passed out of the petitioner prior to petitioning, whether by negligence, extravagance, gaming, donation. or fraud, it need not be set forth in the schedule; where, therefore, the petitioner, while in debt, purchased a house and lot and paid $6,000 towards the purchase, and had the conveyance made to his mother, and subsequently confessed a judgment to his mother for $10,000, under which his household furniture, horses, carriages. &c., were sold, and bid off nominally for his mother. and he and his family afterwards possessed and used the same as his own, and it appeared that the mother's circumstances were such that she could not have been a bona fide purchaser: It was *held* to be unnecessary to insert such property in schedule; also, that the mother was properly inserted as a creditor.

2. There being strong probable cause for opposition to the proceedings of bankrupt. leave was given to the creditors to elect to file the objections interposed to the bankruptcy of the

[1] [5 Law Rep. 321, contains only a partial report.]

petitioner to the allowance of his discharge and certificate, and that the proofs then taken might be used by either party on the hearing of the objections to the decree.

This was an opposition by creditors showing cause against a decree of bankruptcy being granted to the petitioner [David H. Robertson]. The case had been referred on the objections filed, and was now submitted to the court on the report of the commissioner. It appeared that the petitioner, being deeply indebted, purchased a house and lot in the Second avenue, and paid $6,000 cash towards the purchase, and that the conveyance thereof was made to his mother; that subsequently he confessed a judgment to his mother for $10,000, under which he caused his household furniture, horses, carriages, &c., to be sold, and to be bid off nominally for his mother, and that he and his family have always since possessed and enjoyed the real and personal estate as his own, and, also, that the circumstances of the petitioner's mother were such that she could not have been bona fide purchaser, she being destitute of property and dependent upon the petitioner for support; and that the indebtedness of the petitioner to his mother had no foundation in law or equity. It was contended that the evidence exhibited in the case proved, conclusively, that the petitioner had fraudulently withheld from his schedule property really his, and had also placed upon it a debt due to his mother, which was wholly fictitious and fraudulent.

Mr. Fessenden, for creditors.
Mr. Nash, for petitioner.

BETTS, District Judge. The objections, now under consideration, are to the petitioner's being declared a bankrupt, and before it is necessary to enter into an examination and estimate of the evidence produced, the question is to be settled, whether, if all these allegations have been clearly established, they present a bar to the decree of bankruptcy now moved for. The first section of the bankrupt act [of 1841 (5 Stat. 440)] requires the petitioner, applying for a decree on his own behalf, to set forth an accurate inventory of his property, rights and credits, of every name, kind and description, &c. The act, though framed in the most comprehensive terms, demands in this particular a statement of his property or interest, and has reference to some right or interest inherent in the bankrupt. Whatever that may be, however contingent or valueless, he must name it and point it out to his creditors. He is not permitted to exercise his own judgment as to its worth to them. But the language of the act manifestly has relation to a right or interest subsisting in the bankrupt; to that which he can swear belongs to him. This then cannot include property which might have continued his, but has passed out of him so as no longer to be reclaimable by him, whether it is lost by negligence, by extravagance, by donation, or by fraud. The conveyance of the real estate to his mother, if purchased with the bankrupt's money, or without bona fide consideration between them, would be entirely nugatory as to his creditors, and they would have their remedies upon it the same as if the title had been taken in his own name. This is by the positive terms of the statute of this state (1 Rev. St. p. 728, §§ 51, 52), and so the law has always been in respect to fraudulent conveyances as well as resulting trusts (7 Johns. 161; 13 Johns. 471; Id. 463; 16 Johns. 197). The sale of personal property under a sham judgment and execution, would interpose still less impediment to the remedies of creditors; they could attach it as if no such proceeding had existed, and the continued possession of the debtor would be marked as a badge of fraud of a character so decisive as to demand the clearest evidence of bona fides and valuable consideration between the debtor and the preferred party making claim to the property. 9 Johns. 243; Id. 377. Still the rule has always been declared, with like precision and authority, that fraudulent conveyances, or resulting trusts, bind parties and privies, and are absolute conveyances between the grantor and the grantee. 16 Johns. 189; Jackson v. Porter [Case No. 7,143]; 3 Johns. 378. And, even in respect to chattels, it so far divests the right of the grantee that its creditors cannot take the goods without suit brought. 7 Johns. 161. The reference to adjudications confirming and applying this doctrine might be greatly enlarged, but sufficient is given to indicate that the rule of law is plainly and definitely settled on this point.

On general principles, therefore, a person disposing of his property by voluntary gift or grant cannot be regarded as having in himself, thereafter, any right or interest thereto, in law or equity. He could not, with propriety, assert any title to it, nor could he, without deep peril, take an oath that he was owner or possessed any right in property so parted with. Is, then, this general doctrine of the law varied by the bankrupt act? The second section declares "that all future payments in contemplation of bankruptcy, &c., and all other payments, securities, conveyances, or transfers of property, made or given by such bankrupt, in contemplation of bankruptcy, to any person or persons whatsoever, not being a bona fide creditor or purchaser for a valuable consideration without notice, shall be deemed utterly void and a fraud upon this act." This provision of the law cannot be made to reach the purchase of the real estate and conveyance to the mother of the bankrupt, for if it is not confined to conveyances made subsequent, and may embrace those of the character designated whenever made, yet this one could not have been given in contemplation of the

bankruptcy provided for in this statute. The conveyance was made May 1, 1839, and the act did not pass until August 19, 1841. There could not, therefore, be any such contemplation of bankruptcy supposed in this case as is guarded against by the provisions of this section. Moreover, if the section does extend to all intended fraudulent conveyances made by insolvents, or those in failing circumstances, the clause immediately succeeding denotes that such persons are notwithstanding to be declared bankrupts, for the essential remedy against such fraud is dependent upon such decree. The section proceeds, "And the assignee under the bankruptcy shall be entitled to claim, sue for, recover, and remove the same as part of the assets of the bankruptcy." This remedial provision will be nugatory without a decree of bankruptcy, and accordingly in neither point of view would the fact that the conveyance of May 1, 1839, was fraudulent, be proper matter to bar such decree.

The judgment confessed by the petitioner to his mother is put upon his schedule as a valid and subsisting debt, and it is one objection, on the part of creditors, that this is a false list of the petitioner's creditors, and the amount due to each, this judgment not resting on a bona fide consideration. The reply to this objection is that the judgment is not rendered void by the bankrupt act, because it was a security given before the statute was passed, and, by the express words of the second section, that avoids such securities only when made in futuro; and accordingly it stands affected only by the general rules of law. By those rules, most clearly, it is a valid and indisputable indebtedness, as against the petitioner. He is concluded from denying the debt, and, however destitute of valuable consideration it might have been in its origin, yet, as between himself and the judgment creditor and his representatives, it must be recognized by him as a debt he is liable to discharge. He accordingly properly put the holder of the judgment in the list of his creditors. This responsibility is, however, attached to himself, and the property he may possess after all his debts are discharged. If the judgment is without legal or fair consideration, it is mere waste paper as against his other creditors or his assignee in bankruptcy.

Under the views, therefore, I take of this case, I must overrule the objections; but as it appears to me there is strong probable cause for the opposition taken to the proceedings of the bankrupt, this order will be connected, with the condition that the creditors have leave, if they elect so to do, to file the objections now interposed to the bankruptcy of the petitioner, to the allowance of his discharge and certificate, and that the proofs already taken may be used by either party on the hearing of the objections to that decree. No costs are allowed to either party.