ASHLAND SAVINGS BANK v. MEAD & a.

A general attachment of all a debtor's interest in real estate in a town does not hold land fraudulently conveyed by the debtor by a deed recorded before the attachment, and conveyed by his fraudulent grantee after the attachment to an innocent purchaser for value.

Against the latter and subsequent purchasers from him, such attachment is not constructive notice of a lien, or of *lis pendens*.

WRIT OF ENTRY to foreclose a mortgage. Facts agreed for the opinion of the court. August 22, 1876, David Blaisdell conveyed the premises to William G. Brown, and on the same day Brown conveyed them to Mary A. Blaisdell, the wife of David Blaisdell. The consideration named in each of these deeds was $1,500, and they were duly recorded the day of their date. April 26, 1880, Mary A. Blaisdell, for the consideration of $2,500, by deed of warranty conveyed the premises to Sarah M. Perkins. This deed was recorded June 23, 1880. Mrs. Perkins purchased the premises in good faith, without knowledge of any adverse claims. July 23, 1881, the plaintiffs loaned Mrs. Perkins $600, and took from her the mortgage in suit to secure the payment thereof, relying upon the records, which showed no defect in her title. Afterwards Mrs. Perkins conveyed her equity in the premises to the defendant Bond. At the time of the conveyance by David Blaisdell to Brown, Blaisdell was largely indebted to the defendant Mead, and January 13, 1879, Mead caused an attachment of all his interest in real estate in Campton to be made, without describing any particular close or parcel, by leaving a copy of the writ and return in the town-clerk's office in the usual way. Judgment was obtained in this suit at the October term, 1880, and September 30, 1881, the demanded premises were set off on the execution taken out on that judgment. Mead claims title by virtue of that levy, on the ground that the conveyance of Blaisdell to his wife through Brown was fraudulent as to existing creditors.

*Burleigh & Adams*, for the plaintiffs.

*Barnard & Barnard*, for the defendants.

At a former term the court were inclined to the opinion that the plaintiffs were entitled to judgment; but the case was continued for further argument. The opinion, drawn by Judge Stanley, was not announced till the present term.

STANLEY, J.   Conceding that Mrs. Blaisdell's title was fraudulent, as against her husband's creditors, the plaintiffs nevertheless have a good title unless the attachment under which Mead claims can be set up to defeat them.   Mrs. Perkins, under whom they claim, was an innocent purchaser for value, and took a good title, notwithstanding the fraudulent character of Mrs. Blaisdell's title; and the plaintiffs are innocent mortgagees, and they would have a good title even if the title of Mrs. Perkins was fraudulent.   *Gordon* v. *Haywood*, 2 N. H. 402; *Fling* v. *Goodall*, 40 N. H. 208; *True* v. *Congdon*, 44 N. H. 48; *Piper* v. *Hilliard*, 52 N. H. 211; *Hoit* v. *Russell*, Cheshire, Aug., 1874, not reported—*S. C.*, 56 N. H. 559, 564; *Fletcher* v. *Peck*, 6 Cranch 87, 133; *Jackson* v. *Van Dalfsen*, 5 Johns. 53; *Jackson* v. *Henry*, 10 Johns. 185; *Jackson* v. *Terry*, 13 Johns. 471; *Jackson* v. *Walsh*, 14 Johns. 407; *Anderson* v. *Roberts*, 18 Johns. 515; *Ledyard* v. *Butler*, 9 Paige Ch. 132; Bump Fr. Conv. 496, 499; 1 Sto. Eq. Jur., *ss*. 409, 410; 4 Kent Com. 179.

But Mead claims that her title is superior to the plaintiffs' because it dates from an attachment made in 1879, before Mrs. Blaisdell's conveyance to Mrs. Perkins.   The attachment was against David Blaisdell, the fraudulent grantor of his wife.   David parted with his title August 26, 1876, on that day conveying it, so far as he could, to his wife, through one Brown.   These deeds were recorded on the day of their date.   The attachment was general "of all David's interest in real estate in Campton," with no description of any particular parcel, and nothing to indicate what real estate it was claimed David owned.   The return suggested no attachment of this land, or of the property of Mrs. Blaisdell, in whom the record then showed the title of this land to be vested.   The object of the statute, requiring that where real estate is attached, a copy of the writ and return shall be left with the town-clerk, is the same as the statute requiring the registration of deeds, to give notice to all of the true state of the title.   If the record fails in this, it fails to accomplish the object for which it is required to be made.   To hold Mead's title superior to the plaintiffs', we must hold that when the attachment was attempted to be made the title was in David, and that the leaving the copy of the writ with the town-clerk was notice of an incumbrance upon the demanded premises.   If David was to be regarded as the owner, as between his attaching creditor and the fraudulent grantee, we come to the

question whether the copy of the writ with the return thereon created a valid lien upon the premises as against subsequent innocent purchasers. If the premises had been particularly described, or described to such an extent and in such a way that an inspection of the return would have shown an intention to attach them, the question would be whether the plaintiffs could safely take the mortgage from an innocent purchaser for value without searching for attachments in suits against each one of the series of former owners in whom the record showed no real estate when the attachments were made.

If Mead prevails, it must be on the ground that the plaintiffs and Mrs. Perkins had constructive notice of Mead's attachment. When the attachment was made, David had no title of record to this land. He had parted with it long before by a conveyance which, as to everybody but his creditors, was valid; and his grantee could convey it absolutely and effectually to an innocent purchaser. There was nothing in the record of attachments to indicate that the estate of which Mrs. Blaisdell held the title was attached, and nothing calling on the plaintiffs to make inquiry. The fact that David's interest in real estate was attached would not suggest the inquiry whether his wife's prior title was good, or her right to convey perfect; whether David was owing the debt which Mead's action was brought to recover, at the time when he conveyed to his wife; or whether the purpose of that conveyance was fraudulent. If the plaintiffs were put upon this inquiry, there would be no limit to which it might not be extended, certainly not within the period within which the statute of limitations would not be a bar. How can a record which raises no doubt and suggests no inquiry be considered evidence to put a party upon inquiry, and charge him with constructive notice? Having no knowledge of the fraudulent character of David's conveyance, the grantee of his wife was only bound, as against the attachment, to find out whether upon the records the wife's title appeared to be valid. Mrs. Perkins and her grantees were not bound to look for a general attachment of all David's real estate in the town made after the registry showed this land had ceased to be his.

These views do not conflict with the rule that a general attachment of all the debtor's real estate in a town, without other description, is sufficient against some persons, and that such an attachment is good against a fraudulent grantee of the debtor because the conveyance is not valid against the attaching creditor. Cases (like *Howard* v. *Daniels*, 2 N. H. 137, *Moore* v. *Kidder*, 55 N. H. 488, *Taylor* v. *Mixter*, 11 Pick. 341, *Crosby* v. *Allyn*, 5 Greenl. 453, and *Pratt* v. *Wheeler*, 6 Gray 520) in which the land was attached by the creditor before it was conveyed by the debtor, or before the conveyance was recorded, or in which the contention was between two attaching creditors of the same debtor, or in

which an attachment and levy were set up against the fraudulent grantee or one having no more than his defeasible estate, are not in point.  As against the fraudulent and voidable title of Mrs. Blaisdell, and of any one standing in her position, Mead could take the land on execution without an attachment.  But the attachment of David's estate, either alone, or in connection with the registry of deeds, did not give Mrs. Perkins or the plaintiffs a notice of a lien on land which was shown not to be David's by the record on which Mrs. Perkins and the plaintiffs had a right to rely.  A fraudulent grantee, holding only a voidable title, may convey an indefeasible estate to an innocent purchaser.  While the record of the attachment was security for the creditor against a subsequent conveyance by the debtor, the record of the prior conveyance to the fraudulent purchaser, whose title appeared to be good, was security for Mrs. Perkins, the innocent purchaser, acquiring title through that deed.  *Gillig* v. *Maass*, 28 N. Y. 191, 209; *Westbrook* v. *Gleason*, 79 N. Y. 23, 31; *Tarbell* v. *West*, 86 N. Y. 280, 288; Tiedeman Real Prop., s. 817.  Mrs. Perkins and the plaintiffs, having no notice, actual or constructive, of an attachment, or of any defect in Mrs. Blaisdell's title, cannot be defrauded by the creditor's omission to reinforce the attachment by an injunction against Mrs. Blaisdell's exercising the power, vested in her by the record evidence of the prior deed, of conveying a good title to an innocent purchaser.

The land was not the subject-matter of Mead's suit; and the records were not constructive notice to Mrs. Perkins or the plaintiffs of *lis pendens.*

*Judgment for the plaintiffs.*

BLODGETT, J., did not sit; the others concurred.