Curia, per Sutherland, J.
The lessor of thé plaintiff claims title to the premises iii question tinder a deed from Charles Merrick, dated April 25th, 1807, acknowledged the 8th of August, 1808, ahd recorded the 25th of April, 1812. It was a warrahty deed for 20 acres of lot No. 53, in the township of Cazenovia, in Madison, á recording county, and the consideration expressed in it was $300. The title of the ^grantor, Charles Merrick, is admitted: Thé 20 acres conveyed were a part tif a farm of 89 acres, of which.he was in possession at the date of the deed. The lessor of the plaintiff was his son, and lived on a part of the fafm, in a separate house, not on the 20 acres, and worked the whole farm together with his father; The crops weré not kept separate, and the 89 acres continued tti be improved as bne entire farm, after the deéd to the lessor,, as it had been before; the lessor remaining in pdsséssioh ostensibly as before.
The defendant’s title is derived from a sheriff’s salé, under a judgment agaitist Charles Merrick (the grantor) and others. Thé j udgment was docketed the 9th of August, *128 1808. Execution (a fi.fa.) was issued thereon, the 20th of February, 1809, under which all the right and title of Charles Merrick to lot No. 53 (which includes the premises) were sold to Jacob Ten Eyck for $705 17. The sheriff’s deed to Ten Eyck was dated the 1st of April, 1809, and was duly recorded on the 21st of the same month. Several mesne conveyances from Ten Eyck to the defendant were duly proved. Ten Eyck seems to have taken possession about two years after the sale, and on the 25th of September, 1813, sold and conveyed the premises to Daniel Elliott, who, on the 18th of April, 1816, conveyed them to Smith Elliott. He, on the 15th of March, 1817, conveyed to Asahel S. Postletow, and Postletow conveyed to the defendant on the 19th of April, 1817.
It was proved that Ten Eyck, the purchaser at the sheriff’s sale, knew of the deed from Charles to Thomas Merrick, the lessor, before the sale.
A witness also testified that he heard Daniel Elliott, Ten Eyck’s grantee, say, about three months after he went into possession of the lot, that he had heard of Thomas Merrick’s deed, but Ten Eyck was able to save him harmless. At another time he said he had heard of the deed, but not that he knew of it when he purchased. Smith Elliott, the grantee of Daniel, was present at the first conversation; and he, Smith Elliott, told Postletow, his grantee, before he purchased, that Thomas Merrick had a deed of the 20 acres. The same witness also testified that Jacob Post, the defendant and the grantee ,of Postletow, after he went on to the lot, told him *that he knew of Thomas Merrick’s deed, but that Ten Eyck told him that his deed was upon record first, and that Thomas Merrick’s deed was not on record; that he had agreed to give it up.
The plaintiff’s counsel contended, and called upon the court to charge the jury, 1. That this was not a case within the registry acts; that Charles Merrick having conveyed the 20 acres to Thomas Merrick, the lessor of the plaintiff, before the judgment was obtained or docketed against him, he, Charles Merrick, had no title to or interest in the 20 acres at that time or the time of the sale, on which the *129 judgment was a lien; and of course no title passed to the purchaser at such sale. 2. That Ten Eyck had actual notice of the lessor’s deed; and that deed having been recorded before Ten Eyck conveyed to Elliott, the registry became legal notice to him and all subsequent purchasers. 3. That the question of actual notice was a question of fact for the jury.
But the judge ruled. 1. That the registry acts are not confined in their operation to subsequent purchasers immediately from the same grantor; but that one purchasing under a judgment against such grantor, if his deed from the sheriff is first recorded, is protected; 2. That if Daniel Elliott and the purchasers subsequent to him had not actual notice of the deed to the lessor when they took their conveyances, they were not affected by the constructive notice resulting from the recording of Thomas Merrick’s deed subsequent to the recording of Ten Eyck’s, though prior to their respective purchases;' 3. That whether they had actual notice was a question of fact for the jury; and 4. That although Post,the defendant, may have had actual notice of the lessor’s deed when he purchased, yet if Daniel Elliott, or any purchaser between him and Post, was a b'Ona fide purchaser without such notice, so that he Would have been protected if he had not conveyed, then Post, the defendant, deriving title under such bona fide purchaser, is protected, although chargeable with notice.
The judge charged the jury accordingly, and the counsel for the plaintiff excepted to these several opinions; and the jury found a verdict for the defendant.
*No question of actual fraud is raised in the case. It is not denied that the purchase of Thomas Merrick was bona fide, and that the consideration money was paid.
1. Charles Merrick, on the 9th of August, 1808, when the judgment against him, which is the source of the defendant’s title, was docketed, had no title to or interest in the premises in question, upon which that judgment became a lien. ' His title had passed to the lessor of the plaintiff, by the deed of April 25th, 1807. As between *130 the parties to that conveyance, the recording of it was not necessary to give it legal force and efficacy. It divested the grantor of all'his interest in the land, and transferred it to the grantee. It.is true, that by force of the .recording act, .(1 R. L. 370, sect. 4,) the title of the grantee might still be defeated, if he delayed recording his deed .until after the grantor had conveyed it to another bona jide,purchaser or mortgagee for a valuable consideration, who had recorded his conveyance: The policy of the act was to compel the purchaser of land to put .his conveyance upon record, so that the vendor would not have it in his power to perpetrate a fraud by selling it a second time. And the act makes the first purchaser a party to the fraud, and avoids his conveyance on that ground. But the act does not.declare that an unrecorded deed shall be adjudged fraudulent and void against a subsequent judgment.
It has been adjudged, under the act requiring mortgages to be registered, (1 R. L. 373, sec. 2,) that a judgment creditor is not a bona jide purchaser within that act, and that a judgment docketed has not a preference over .an unregistered mortgage. (Jackson v.Dubois, 4 John. 216.) Judge Spencer, in the case cited, says the judgment being by act of law, does not destroy the lien acquired by an unregistered mortgage, nor gain a preference over it. But he expresses the opinion, that if the mortgagee should permit a sale to take place prior to the registry, the vendee of the sheriff would be protected from the mortgage, and it would losé its priority.
In Jackson ex dem. Merritt v. Terry, (13 John. 471,) it was held, that a sheriff’s deed for land must be recorded like any other deed; and that, if after land has been sold on execution, and a conveyance made by the sheriff, and before such Conveyance is recorded, the former proprietor conveys it to a bona jide purchaser for a valuable consideration, who has his deed first recorded, such subsequent purchaser will sécure a priority. In this latter case, it will be observed, the. judgment and sale under it were prior to the conveyance, which was first recorded, and which, on that ground, was held to be entitled to priority; so that the *131 question which arises in this case was not presented. In each of those cases there was an interest in the defendant in the execution, which was liable to be sold, and on which a judgment would be a lien. In the first case, the defendant in the execution was a mortgagor, and the interest of a mortgagor may be bound by',a judgment; in the other case, the first conveyance was void, and left the interest of Archibald Turner in the same condition as though it had not been made; and of course liable to the lien of a judgment.
But the case of Jackson v. Town, (4 Cowen, 606,) is decisive on this point. [1]
In that case, the lessor of a judgment claimed under a judgment against Eleanor Town, docketed in February, 1823, and a sale under it, at which he became the purchaser of the right and title of the defendant in the execution to the premises in question, which were conveyed to him by a sheriff's deed, recorded. The defendant, who was the daughter of Eleanor Town, showed a conveyance in fee from her mother to her, of the premises in question, dated March 30th 1821, for pecuniary consideration. This conveyance was not recorded; and after considering the case in its other aspects, the judge who delivered the opinion of the court proceeds, in page 604, to discuss the question, whether Eleanor Town after the conveyance to her daughter of the 30th of March, 1821, (admitting it to have been bona fide and uncontaminated with fraud,) although that conveyance was not recorded, had an interest in the premises which could be bound by a subsequent judgment, and sold under an execution. He remarked, that after the 30th of March, 1821, there was no interest remaining in Mrs. Town that was the subject of sale. She had no lands, tenements or real estate within the meaning of the statute ; and consequently there *was nothing to give life or effect" a sheriff’s deed, which solely derives its efficacy from the fact, that the defendant in the execution had an inter *132 est liable to be sold. In considering the effect of the she riff’s deed having been first recorded, it is conceded that the statute, (1 R. L. 370,) is not confined to a purchaser imme diately from the same grantor ; but that it is applicable to cases where the second deed was obtained mediately or indirectly from the same grantor, in consequence of a sale under a judgment against him: as if the defendant in the execution had previously mortgaged the premises, which » mortgage was not recorded, there the purchaser under the judgment at the sheriff’s sale, would be protected against the mortgage. But a sheriff’s deed is not within the recording act, where the defendant in the judgment and execution had no interest in the premises which could be bound by a judgment or sold under an execution. [1]
It is further remarked in that case, that a subsequent bona fide purchaser, within the meaning of the act, must be one to whom the grantor in the first deed actually conveyed, or that he did or suffered some act, which, by the operation of the law, authorised a sale and conveyance, and if the deed was in consequence of a sale under a judgment, then that the property sold was a legitimate subject of such sale.
These views and observations are directly applicable to this case, and are decisive of the plaintiff’s right to recover.
A new trial must therefore be granted.
New trial granted.

 This case is commented on and explained in Jackson v. Post, 15 Wen. 595.

 It has since been decided in the Court of Errors, that a purchaser at a sheriff’s sale of real estate who procures his deed to be duly registered, cannot claim the benefit of the registry act, against a third person in the actual possession thereof, under an unregistered deed; as such possession was constructive notice to the purchaser, to impose on him the duty of inquiring as to the rights of the person in possession. Tuttle v. Jackson, 6 Wen. 313. See also Jackson v. Post, 15 Wen. 588. Hooker v. Pierce, 2 Hill, 650. Schutt v. Large, 6 Barb. 373.
But the provision of the act, that unrecorded deeds shall be void against Iona fide purchasers, &e. has no application to a purchaser who derives his title from one claiming in hostility to all the parties of the unrecorded deed, Embury v. Connor, 2 Sanf. S. C. Rep. 99.