## Heard *v.* Evans and Isham, and Isham and Blanchard *v.* Heard and Evans.

A mortgage lien can only be raised by a re-conveyance from the mortgagee, or by an absolute payment of the mortgage money.

When a mortgage was given to secure the payment of a note, and the note before it matured was cancelled and another substituted in its place—held, that the mortgage could be enforced for the payment of the note so substituted.

On the 13th of August, 1835, Heard, the complainant, agreed to sell John M. Evans, 640 acres of land, for which Evans was to pay $2,300, the payment of which was to be secured by Evans' note payable the first day of January, 1838, and by a mortgage on the land sold, and also on three eighths of land. In pursuance of that agreement, on the 9th of November, 1835, the note was made and mortgage executed. Subsequently Heard surrendered said note, so secured by mortgage, to Evans, and took two other notes in lieu thereof, which, when paid, were to be a satisfaction of the mortgage. These notes were not paid, and in December, 1837, Evans took them up and gave his own note in their stead, payable January 1, 1838, leaving the transaction as it originally stood. Before the mortgage fell due Evans sold the land to Daniel M. Isham, and gave him possession. Evans' note for the original purchase money was not paid at maturity, and he filed his bill to foreclose the mortgage.

At the same time Arthur Isham and S. S. Blanchard filed their bill against Evans and Heard, charging that Evans had sold the land covered by the mortgage of Heard to them; that Heard had agreed with Evans to release the mortgage on said land, and had cancelled the original note, to secure the payment of which the mortgage was given, but subsequently refused to cancel the mortgage of record, and asserted his right to enforce the same.

The bill also prayed that the mortgage should be cancelled.

The evidence in the case is sufficiently set forth in the opinion of the court.

Pryor Lea for complainant Heard.

The cases are submitted on bills, answers, and proofs, as on bill and cross bill, (by consent.)

Heard seeks to foreclose the mortgage given to him by Evans, while Isham and Blanchard, purchasers under Evans, seek to prevent the foreclosure, and to have the mortgage treated as *"extinguished,"* or as *"postponed,"* in reference to the adverse claims of these sub-purchasers.

Heard says that he never has received satisfaction for the mortgage money; that the debt is yet a subsisting demand against Evans; that the mortgage has never been discharged by any entry on the record, and is yet in full force. He insists that the substitution of the note of Evans for part, and of Doctor Jones for part of the amount, in place of the first note, did not make, in fact or in law, any satisfaction of the debt secured by the mortgage: that the last note given by Evans to Heard, in place of these, was not the creation of a new debt, but merely a recognition of the old debt, which remained the same debt secured by the mortgage, under all the forms of the other papers or securities.

On the other hand, Isham and Blanchard say, that the surrender to Evans of the first note, on taking the other in place of it, was an *"extinguishment"* of the mortgage. But if not of itself an extinguishment, it became so in connection with an agreement *verbally* made between Heard and Evans, that it should be such extinguishment. But further, if not an extinguishment, and leaving the mortgage capable of being enforced as against Evans, yet the sub-purchasers are in a better condition than Evans, and the mortgagor will be postponed to them, because of the surrender of the original note, the verbal promise of Heard as to the extinguishment, and the want of express notice from Heard that he would insist on his mortgage, more especially as to Isham, whose negociation for part of the land was known to Heard before he surrendered the first note.

As to *satisfaction* of the mortgage money, there is no pre-

tence of any actual payment, nor is there any pretence of satis-
faction on record, except by the notes of Evans and Jones substi-
tuted for the first note, and which were substituted by the last
note of Evans. But this is no satisfaction, for the substitution
of one security for another is no satisfaction of a debt.

The CHANCELLOR.

These two cases are, by agreement of counsel, submitted
together, to be considered of as an original and cross bill, as t
the relief respectively prayed by the parties, complainants and
defendants. The bill of Heard states that in August, 1835, he
sold and conveyed to the defendant, Evans, divers lots and par-
cels of land for the sum of three thousand, two hundred dollars.
That in November of the same year he took from Evans his note
for that sum, payable January 1, 1838, as also a mortgage
on the land so sold, and on other lands belonging to Evans,
for the purpose of securing the payment of said note. That
the mortgage was duly recorded; that for the accommodation and
convenience of Evans, he subsequently surrendered to him said
note of $3,200, and took in lieu thereof a note on one Wm. S.
Jones for part, and a new note from Evans for the remainder,
with, as he alleges, the express understanding that this transaction
was not in any way to impair his mortgage lien. That the note
on Jones, not being paid at maturity, was returned to Evans, as
well as Evans' second note; that thereupon Evans executed a
third note for the sum of $3,200, thus placing the matter in its
original form. That the defendant, Isham, has since purchased a
portion of said mortgaged premises from Evans. And that the
defendant, Blanchard, purchased the remainder of said mortgaged
premises under a deed of trust, and under judgments, all junior in
date to the complainant's mortgage. That at the time of the pur-
chases by Isham and Blanchard they were fully advised of the
complainant's mortgage, and well knew that the transaction of
the temporary substitution of notes between Evans and complain-
ant was not intended as an extinguishment or abandonment of
his mortgage lien. The bill prays for an account and for a decree
of foreclosure and sale of the mortgaged premises.

Evans answers and says, that while he was negotiating with

Isham for a sale of a part of the land aforesaid, Isham objected to making the purchase until Heard's mortgage was removed. That he informed Heard of the contemplated sale to Isham, and of his desire to have the mortgage released, and that the substitution of the note of Jones and his own note were intended for that purpose, and was agreed to by Heard, with an express view to the contemplated sale to Isham, and that there was no qualification or condition annexed to the arrangement so made.

Isham reiterates the same facts in his answer, and states that he purchased under a full conviction that the mortgage was extinguished by the arrangement which Evans stated he had made. That Heard was fully advised of his (Isham's) contemplated purchase, and assented thereto. That the time Evans made the arrangement aforesaid, he was fully solvent, and in high credit.

Blanchard answers, and relies upon his purchase made as aforesaid, and says it was made upon the information and belief that the complainant's mortgage had been satisfied. Isham and Blanchard have filed their bill against Heard and Evans, relying upon the facts stated in their answers, and which they reiterated in their bill, and pray that Heard's mortgage, which they allege has been released, may be decreed to be null and void. The only question to be decided is, whether Heard actually relinquished, waived or abandoned his mortgage lien.

Several depositions have been taken, but none of them seem to have any very material bearing upon the question in controversy, save those of Hugh C. Stewart, Evans, one of the defendants, and William Furland. Stewart says that he was present when Evans told Heard he could sell the land in controversy to Isham, if the mortgage was released. Heard said he would release the mortgage if the debt was *otherwise well secured;* he would take *Jones's note* or notes, or *any as good,* or that he would take Evans's own note *well secured,* and does not know that Heard ever *released* the mortgage. Evans shortly afterwards showed him a note which he had taken up from Heard, and told him the mortgage was released. Furlow says, that, after Isham had purchased, he inquired of him whether he had got a good title from Evans, and told him of Heard's mortgage. Isham replied that he knew of the mortgage, and was not uneasy about it; that he un-

derstood Isham, from their whole conversation, to mean that the price paid by him to Evans would enable Evans to *lift* the mortgage. Hilliary Furlow says, that, in a conversation had by him with Evans, in 1836, about Heard's mortgage debt, he (Evans) said Isham was to pay, or would. pay, that debt. Samuel Heard testifies that he was present when Evans received back the note of Jones. Evans said he thought it was but fair he should have it, as Heard refused to release the mortgage. The deposition of Evans states that his answer is correct, except as to the time and manner of Isham's purchase. The facts were, Isham knew of the mortgage, but deponent promised to *lift* it, and thereupon the contract was closed. He adverts to the transaction of the exchange of notes, and says he *believes* Heard considered the mortgage released. No receipt seems to have been taken; no release executed; no satisfaction entered, nor any writing of any kind showing that such was the intention.

It will be seen from this review of the testimony, that no one of the witnesses deposes to any distinct act on the part of Heard abandoning or relinquishing his mortgage lien. Stewart is the only witness whose testimony remotely approaches the point. He merely proves a *proposition* by Evans to procure a release, which Heard said could be had upon terms which he mentioned. There is no testimony showing a compliance with those terms. If a lien, solemnly secured by a formal instrument of writing and spread upon the records of the country, may be displaced or destroyed by testimony so vague and indefinite, the country would place but little reliance upon such form of security.

A party having a specific legal lien upon property, cannot be divested of it, except by some distinct act of his own, amounting to a waiver or absolute abandonment of it, or is guilty of some fraud or concealment, which would induce a postponement of his lien in favor of junior incumbrances.

I take it to be clear that mere treaty and negotiation, for a change or variation in the terms of a contract, will not amount to a waiver, unless they constitute evidence of an actual waiver or abandonment. And where a party resists the enforcement of a contract upon such ground, the defence should be made out and established by full, clear and positive testimony. See Robinson *v.*

Page, 3 Russell, 114; 3 Cond. Eng. Ch. R. 318. In this case the mortgage was spread upon the records of the country, of which Isham and Blanchard had notice. The legal title was in Heard, subject to Evans's equity of redemption. They were bound to have inquired whether that legal title had been divested out of Heard and vested in Evans. This could only have been legally done in one of two ways—either by a reconveyance from Heard, or an absolute *payment* or satisfaction of the mortgage money, which, according to modern authorities, would have worked the same effect.

The bill of Isham and Blanchard must be dismissed, and a decree for an account and foreclosure on the bill of Heard. But, inasmuch as the conduct of Heard may have served to some extent to mislead the defendants, he will be decreed to pay the costs of both suits.