## VANNICE *et al.* v. BERGEN *et al.*

I. Per WRIGHT, Ch. J.; LOWE, DILLON and COLE, JJ., concurring:

1. MORTGAGE: REVIVOR: FRAUD. When the mortgagee has been induced by the fraudulent representations of the mortgagor to surrender his mortgage, he may, in equity, keep the same alive and enforce it, as though no surrender had been made.

2. SAME: RIGHTS OF THIRD PERSONS. A third party, who, after such surrender, and before the revivor of the incumbrance, parts with his money upon the faith of such discharge, will not be prejudiced by such revivor.

3. SAME: MERGER. The general rule that the purchase by the mortgagee of the equity of redemption of the mortgagor, operates to extinguish the mortgage and the mortgage debt, by merging the mortgage in the legal title, does not apply when it is the intention to keep the mortgage alive, or when it is to the interest of the mortgagee to keep it alive and it can be done without prejudice to the rights of the mortgagor or third person.

## II. Per WRIGHT, Ch. J.; LOWE and COLE, JJ., concurring.

1. SURRENDER OF MORTGAGE OBTAINED BY FRAUD. On the 7th of April, 1857, H. V. and A. V. loaned to B. the sum of $2,000, for which he executed to each a note for $1000, to secure the payment of which he also executed a mortgage, conveying to them certain real estate, which mortgage was duly recorded: February 19th, 1859, G. T. & Co., recovered a judgment against B.; in February, 1860, H. V. bought the note executed to A. V., and agreed with B. to take the property mortgaged, in satisfaction of both notes, B. representing, as an inducement thereto, that there were no subsequent incumbrances upon said property, whereupon a deed containing covenants against such incumbrances was executed by B. to H. V.: A. V. entered satisfaction of the mortgage as to the note executed to himself, on the mortgage record, August 7th, 1860: after all of which G. T. & Co. caused execution under their judgment to be issued, and levied upon the property, and at the sale thereof, themselves became the purchasers for the amount of the judgment: at the time of the sale B. was insolvent, and has continued so ever since. *Held*, That inasmuch as the surrender of the mortgage and the sale under execution, placed the purchasers in no worse position than they would have occupied had no such surrender and sale occurred, their rights were subordinate to those of the mortgagees, after a revivor of the mortgage.

## III. Per DILLON, J.

1. SURRENDER OF MORTGAGE: FRAUD: SUBSEQUENT PURCHASERS. When a mortgagee is induced to surrender his mortgage by the fraudulent representations of the mortgagor, he is entitled to relief, in equity as against the mortgagor and subsequent creditors, who have not become purchasers under their judgments.

2. PURCHASER AT JUDICIAL SALE. The purchasers at sheriff's sale takes the land purchased, discharged of any claim or title, whether arising under an unregistered deed or a mere equity, of which he had no notice at the time of the purchase, and which would be invalid against an ordinary purchaser; and this principle applies both at law and in equity.

3. SAME. The entry of satisfaction of a mortgage of record, either in whole or in part, though obtained by fraud, operates to discharge the lien of such mortgage to the extent of such satisfaction as to subsequent pur-

chasers, at either ordinary or judicial sales, without notice of the mortgagees' equities, even when the purchaser, at the judicial sale, is the judgment plaintiff.

*Appeal from Benton District Court.*

FRIDAY, JUNE 24.

ON the 7th day of April, 1857, plaintiffs (father and son) loaned to Bergen $2,000, taking his two notes for $1,000 each, due April 1, 1859, one note being payable to Henry (the father), and the other to the son Albert. Bergen and wife made their mortgage to plaintiffs to secure said notes upon one hundred and sixty acres of land, which was duly recorded September 26, 1857. February 19, 1859, respondents, Greene, Traer & Co., recovered, in vacation, by confession, a judgment against said Bergen and one Chinn for $667.24, which (if valid) is an admitted lien upon the land mortgaged to plaintiffs. In February, 1860, there remained due on the mortgage the sum of $2,200. Bergen was unable to pay. Henry Vannice bought the note held by the son, and purchased the land of Bergen, agreeing to receive it in satisfaction of the mortgage debt, and to pay therefor the further sum of six hundred dollars. Bergen, accordingly, conveyed to the father (Henry) the said land with full covenants; said deed bearing date March, 1860, About this time Albert Vannice made the following entry on the margin of the record of said mortgage: "Received payment in full satisfaction of my interest in the within mortgage. (Signed,) A. V. VANNICE."

April 7, 1860, Greene, Traer & Co. issued an execution on their judgment, levied upon this land as the property of Bergen, and, thereunder, on the 16th of June following, the same was sold to the plaintiffs therein, for the amount of their said judgment, interest and costs. In July, 1861, there being no redemption, the sheriff made a deed, as required by his certificate and the law. December 17, 1860,

plaintiffs filed the present bill, asking, among other things, that "the receipt of satisfaction, entered by said Albert V. might be canceled and declared null and void," and that they should be remitted to their rights, under the original mortgage, in the same manner as though no deed or conveyance had ever been executed; that said mortgage be declared a lien upon said land, as of its date, and have priority over all subsequent judgments or liens, and particularly the judgment of Greene, Traer & Co. Plaintiffs further pray for a foreclosure of said mortgage, when thus reinstated. In an amendment to their bill, they propose and offer to pay to Green, Traer & Co. all the costs of said sheriff's sale, with interest, as also all damages resulting to them from granting the relief sought in said petition. It seems that Bergen did not call or ask for the surrender of his notes and mortgage; but the same were left with, and still are in the possession of complainants. Bergen, Chinn, Greene, Traer & Co. and Webb (another judgment creditor of Bergen's) are made defendants. Greene, Traer & Co. are the only parties who answered, and all the questions made, arise between them and said complainants. On the first hearing the bill was dismissed, and plaintiff's appeal.

*C. H. Conklin* for the appellant, cited Mit. Eq. Jur., 78; *Hyde* v. *Tanner*, 1 Barb. S. C. R., 75; *Bonaver* v. *Cormack*, Id., 392; *The Heirs of Hitchcock* v. *The United States Bank of Pennsylvania*, 7 Ala., 386; *Warner* v. *Blakeman*, 36 Barb., 501; 1 Green's Ch., 117; *Packard* v. *Kingman et al.*, 11 Iowa, 219; *Robinson* v. *Sampson*, 10 Me., 388; *James* v. *Morey*, 2 Cow., 246.

*J. C. Traer* and *I. M. Preston & Son* for the appellee, cited *Wickersham* v. *Reeves & Miller*, 1 Iowa, 413; 4 Ed. Ch., 232; 2 Sand. Ch., 319; 3 Id., 135; 1 Johns. Ch., 417; 5 Id., 214; 2 Cow., 246; 3 Hill, 95; *Jackson* v. *Tuttle*, 6 Wend., 213; *Williamson* v. *Brown*, 15 N. Y., 354; *Robin-*

son v. *Rowan*, 2 Scam., 499; *Dey* v. *Dunham*, 2 Johns. Ch., 182; *Demarest* v. *Willard*, 8 Cow., 206; 3 Ves., 498; *Jackson* v. *Post*, 15 Wend., 588; *Grimstone* v. *Carter*, 3 Paige, 421; *Jackson, ex dem. Gilbert*, v. *Burgett*, 10 Id., 457; *Jackson, ex dem. Salisbury*, v. *Fish et al.*, Id., 455.

WRIGHT, Ch. J.—The validity of the judgment under which defendants claim, is not a subject of much, if any, controversy in the present proceeding; and as that is substantially the sole question in another case now before us, between these parties, we need not at this time give it any attention.

That Bergen represented the land to be unincumbered at the time he conveyed the same to the plaintiff, Henry Vannice, is very well established. Whether said purchaser had *actual* notice of defendant's judgment at the time, is a question of more doubt. The finding of the referee on this subject is not so clear and unequivocal, as in the case which follows. True, he says, that the purchaser was told by Webb, one of the judgment creditors, of the existence and approximate amount of defendant's judgment, before the conveyance. But in another part of his finding, he admits there is conflict of testimony, as the purchaser denied in his testimony, in the most positive terms, any such conversation.

This being an equitable proceeding, we hear the case *de novo*, and hence look to the testimony to ascertain the truth in the premises, and especially so, where the finding is to some extent equivocal, and counsel seek to go behind it. Looking then at all the testimony and circumstances, we unite in the conclusion that *actual* notice is not established. Webb swears to it, we admit. Plaintiff as positively denies it. This conflict may be reconciled upon the hypothesis, that plaintiff, who is shown to be somewhat deaf, did not hear all that was said. The other assump-

tion would lead to the conclusion that plaintiff had sworn falsely. In addition to this other persons were present, with reasonably fair opportunities for hearing the conversation, and swear that they heard nothing said about this judgment. Take the further fact, that Bergen was quite, if not entirely insolvent; that plaintiff paid him in property and money a sum almost equal to this judgment, over and above the amount due on his mortgage, the improbability that he would take his deed and part with his means, with *actual* knowledge of this incumbrance, and it seems to us that plaintiff's theory is the more probable and reasonable.

The purchase was made then without actual knowledge of the existence of the judgment. Plaintiff was induced, by the misrepresentations of Bergen, to take the title, and relying thereon, he agreed to surrender his mortgage. And yet, by a contract thus made, as between them, he is not bound, but he may be heard in equity, to assert his lien, and will be allowed to revive or keep it in life, and recover thereon, as though the conveyance had not been made. As to this proposition we suppose there is no controversy.

The question still remains, however, whether plaintiffs have a right to treat their mortgage as unsatisfied, and to insist upon it as a lien paramount to that of defendant's judgment. In considering this question, a brief reference to some of the facts may afford us assistance.

It will be remembered that plaintiffs had the first lien upon this land. This lien never has been satisfied, in any other way than by the conveyance of the land from Bergen to them. *Prior* to this conveyance, and while the mortgage lien was in full force, defendants recovered their judgment. As far as material, it may also be stated that the *debt* forming the basis of the recovery, was contracted during the existence of said lien. *After* the conveyance, defendants levied upon and sold the land, but advanced no money,

parted with no right, except such as resulted from the satisfaction of their judgment by their purchase under the execution. Bergen was quite, if not entirely, insolvent at the time of his sale to Vannice; or at least his ability to pay defendants' demand, was as great afterwards as it was before. Nor does it appear that he then had or has had since, any property from which defendants could have made their judgment, or which has been lost to them by the act of plaintiffs, in connection with this land and their lien thereon.

Under such circumstances, we are unanimously of the opinion that plaintiffs' mortgage is not extinguished, as against the said judgment creditor, so far as it covers the note of $1000, made to Henry Vannice; while a majority of us entertain the same opinion as to the note payable to the son, Albert, and as a consequence that the court below erred in confirming the report of the referee, recommending the dismissal of the bill.

As between plaintiffs and Bergen, as we have already seen, there would be no question as to their equitable right to insist upon the mortgage. For, assuming that they received a deed for the property, with the understanding and upon the agreement that the mortgage debt was to be satisfied, yet this was based upon his representation as well as the assurance and covenants of his deed, that the property was unincumbered, and therefore if the controversy related to them alone, and it was necessary to the protection of plaintiffs' rights that the mortgage should be kept in life, equity would so order, and would not give to the mortgagee the benefit of a satisfaction procured by his own fraud and misrepresentations, such representations having been relied upon, and with apparent reason, by plaintiff. Now, is there any good equitable grounds for placing the present appellees (the judgment creditors) in any better position.

As to the general proposition, that if the mortgagee purchases the equity of redemption from the mortgagor, the mortgage, as well as the mortgage debt, is extinguished, there is, of course, no doubt. For, ordinarily and legally, the effect of such an arrangement is to vest the mortgagee with the whole estate, and such an entire interest is inconsistent with his claim under the mortgage. (*Wickersham* v. *Reeves & Miller*, 1 Iowa, 413.) If, however, it was the intention to keep the mortgage alive, or if it is to the interest of the mortgagee, and it can be done without prejudice to the rights of the mortgagor or third persons, the doctrine of merger, as between them, will not apply. Ordinarily, also, nothing but payment of the debt, or an express release, will operate to discharge or satisfy the mortgage. As long as there remains a debt the lien continues. And when an express release, or full and unqualified discharge, even, has been procured by fraud, equity, as between the parties to the mortgage, will interpose and revive it, giving it full validity from the date of the original lien. (*Barnes* v. *Carnack*, 1 Barb., 392; 1 Hillard on Mort., 329, 307.

, This being so, we are not aware of any case which applies a different rule to a mortgagee *who purchases the equity of redemption.* Nor is there any reason for the application of a different rule.

Then advancing one step further, we say, that a party who has not advanced any money upon the strength of such supposed release or discharge, who is not placed in any worse position by reason of his reliance upon said supposed extinguishment, or who does not show that an equity arises in his favor by such advancement or reliance, or something of that character, stands in no better position, and is entitled to no greater protection. And here it must be remembered that such third party is not to be affected by the fraud or act of the immediate parties, of which he had no actual or constructive notice. Considered in this

light alone, the party claiming the continued existence of the lien, could not, necessarily, resist the other or third lien holder. But the proposition is, that the right of the mortgagee to recover the mortgage, as against the mortgagor, being established, the same right exists as against third persons having no better or other equities than the mortgagee; and this, without reference to the question of notice of the fraud or misrepresentations, which induced the actual or implied discharge or release of the lien.

Now, if, *after* such discharge, without notice of the fraud, and *before* the revival of the incumbrance, a third party should part with his money, upon the faith of such discharge, it would be manifestly wrong and inequitable to permit the revived lien to be asserted as against such intervening rights. Not so, however, when the rights did not thus intervene, or when the party has sustained no loss in consequence of relying upon the extinguishment of the lien.

But, leaving the general discussion and coming to the case before us in its actual facts, we find that the respondents were fully as able to collect their debt from Bergen, after this bill was filed, as before the conveyance was made to Vannice. In other words, they parted with no liens or securities from their reliance upon the satisfaction of the mortgage by the vesting of the legal title in the mortgagee; there was no change of the debtor's property to their prejudice, or otherwise; they made no new or further advancement; their judgment was simply a lien before such merger, subject to the prior mortgage; it occupies no worse position now, if that satisfaction should be set aside. If the claimed merger had not taken place, respondents would have been compelled to pay the mortgage debt before they could have obtained a good title to the land. Upon what principle is it, that they shall be in a better position, or that they have a more favorable standing in an equitable

forum, because the mortgagee has bought in the mortgagor's right to redeem? And especially is this inquiry pertinent when it is remembered that it is manifestly to the *interest* of the mortgagee to keep his lien in life, and that, if he ever *intended* otherwise, it was because of the fraud of the mortgagor. Not only so, but it is worthy of remark, that respondents claim an interest in this property, not under the mortgage, but under the mortgagor, or in his equity of redemption. This right intervenes between the right under the mortgage and the equity. If the two rights coalesce or merge, what becomes of respondents' judgment lien? When does it come in? Is it not lost in the union of the other two rights? Or, if not thus lost, how can they claim that the union gives them a greater right, than if they stood separately? And, in this view of it, is it not essential to them, that the mortgage should be kept on foot to enable them to enforce their legal or equitable rights? *Hunt* v. *Hunt*, 14 Pick., 374.

And the foregoing views, if correct, when applied to the note payable to Henry Vannice, it seems to us are equally applicable to the other. It will be perceived at a glance, that the whole reasoning applies with equal force to each. The case is placed upon the ground, that in equity the mortgage should be kept in life as to Bergen, and that respondents are in no position to claim any greater protection. The entry on the margin of the record, by Albert V., does not change the case. It is shown, beyond all question, that he was not paid anything by Bergen, but that this was a method adopted to transfer or release his interest in the security to his father. If the conveyance to the father by Bergen, under the circumstances, shall not have the effect of giving priority to respondents' judgment over the mortgage, we cannot see why this "receipt on the margin of the record" can equitably aid them. If, as to them, the mortgage was satisfied, and they can claim the

benefit of the satisfaction, that is an end of the case—the character of the evidence showing that satisfaction being quite immaterial.

But it is claimed that defendants sold the land under their execution, bought it in, and thus satisfied their judgment *before* any steps were taken to revive this mortgage. And here it is not our purpose to enter upon the discussion of the question, whether *at law* defendants would stand in the attitude of innocent purchasers without notice. The point is one upon which the authorities differ, and some of which will be found referred to in *Parker* v. *Pierce & Buell, ante.* This is an equitable proceeding, and we hold that defendants are to be affected by the equities existing between plaintiffs and Bergen, under the peculiar circumstances of the case, without discussing or determining whether a plaintiff purchasing at sheriff's sale the property of his debtor, is, as a legal rule, to be treated like any other purchaser. It must be remembered that they not only bid in the property themselves; that they paid no money, but that during the time that their judgment has been apparently satisfied, they have lost nothing, for their debtor has been in no condition to pay. They could have made nothing by execution. If he had been able to pay, and his property in the mean time was lost to them, a very different question would arise. But if plaintiffs' right to priority is recognized, defendants may have the entry of satisfaction on their judgment set aside, and the judgment will stand unaffected by any of the proceedings under the execution. All the costs made by said sale plaintiffs propose to, and should, pay with interest. . Under such circumstances, we do not believe any rule or principle is violated in reviving this mortgage. And it is certainly inequitable to give defendants a priority to which they have no pretense of right, save upon the technical ground,

that plaintiff's debt has been satisfied by their purchase of the equity of redemption.

The decree below will be reversed and the cause remanded, with instructions to set aside the conveyance from Bergen to Vannice, in accordance with the prayer of the bill; to ascertain the amount due and unpaid on the mortgage debt; to enter a judgment for the amount thus found, with an order of foreclosure, and that respondents be required to pay the amount thus found to be due, within a day to be fixed after said decree, and in default thereof that execution issue, as provided by law, for the collection thereof. Defendants may, at their option, have an order setting aside the entry of satisfaction on their judgment, and reinstating it as fully as if no sale had been made under said execution. Plaintiffs are required, however, to pay to defendants, or the clerk of the court below, for their use, all the costs of said sale, including fees for execution, making the sheriff's deed, and recording the same, with interest thereon at ten per cent (they so offering by their bill), before being entitled to the decree herein contemplated. And the Court will make such other and further orders, not inconsistent with this opinion, as may be necessary and proper under the case made to settle the rights of the respective parties.

Reversed.


DILLON, J., *dissenting.*—I proceed to state, as briefly as may be, my views of the case, and the grounds of my partial non-concurrence in the result reached by the opinion which has just been pronounced.

The mortgage which the present petition seeks to revive and reinstate, secured two notes, one to Henry and one to Albert V. Vannice. This mortgage was the first lien on the property. While Bergen, the mortgagor, was the owner of the property (subject, of course, to the lien of the mort-

gage of the Messrs. Vannice), the defendants, Greene, Traer & Co., recovered their judgment against Bergen. This judgment was a lien on the premises, subject to the mortgage. While this was the situation, Henry Vannice (having become the owner of both notes, secured by the mortgage) purchased of Bergen the mortgaged premises absolutely, paying therefor as follows: surrendering, or agreeing to surrender, and cancel the mortgage debt, and paying to Bergen the further sum of six hundred dollars. This was his contract with Bergen. This contract he now asks a court of equity to annul. He also asks that the deed which he received of Bergen be set aside; that the mortgage be revived, and that he be remitted to his original rights thereunder. This he asks, not only against Bergen, but also against the defendants, *after* they have become the *purchasers* of the premises, under and by virtue of a sale by the sheriff, on an execution issued under their judgment.

It is one thing to be entitled to this relief, as against Bergen, and another and quite a different thing to be entitled to it as against the defendants. Has the plaintiff made out a case, entitling him to relief as against Bergen?

The contract which he and Bergen made is binding upon them, and it is not properly within the power of a court of equity to set it aside, unless there was some *fraud, accident* or *mistake.*

Accordingly, the plaintiff bases his right to the relief sought, upon the ground of fraud.

The evidence shows that, during the negotiation for the conveyance of the premises, Bergen informed the plaintiff that there were no liens upon the premises. This was false, because there was, at the time, an unsatisfied judgment in favor of one Webb, and also the judgment of the defendants, and these were both liens. If the plaintiff, upon these false representations, was induced to take a deed for the land, in satisfaction of his mortgage, it is plain,

upon the most familiar and undisputed principles of equity, and upon the authority of adjudged cases, that he would be entitled against Bergen to have the contract set aside, and his mortgage restored. *Hyde* v. *Tanner*, 1 Barb. S. C. R., 75, and cases cited; *Miller* v. *Wack*, 1 Saxton (N. J.) Ch. R., 204; *Barnes* v. *Carnack*, 1 Barb. S. C. R., 392; *Burchard* v. *Phillips*, 11 Paige, 61.

It is true, that the referee also reports that he finds that Vannice had actual notice, at the time he made this contract with Bergen, of the defendant's judgment. If this was the fact, it would destroy the very ground of the plaintiffs' equity as against Bergen. But, upon the whole, I am inclined to agree with the majority, that a fair view of the entire evidence and all the circumstances, favor the conclusion, that the plaintiff did not have actual knowledge of the defendant's judgment, and hence, the right to the relief, as against Bergen, is established.

I now proceed to discuss the plaintiff's rights as against the defendants, Greene, Traer & Co.

It was after the plaintiff received his deed from Bergen, that the defendants issued execution on their judgment, and became the purchasers of the premises at sheriff's sale. The defendants are not shown to have had any knowledge of any misrepresentation by Bergen to the plaintiff. They had knowledge of just what the records showed. The records showed that Albert V. Vannice (to whom one of the notes was made payable) had entered satisfaction on the record of his interest in the mortgage. The records did not show that Henry Vannice had ever been the owner of the note of Albert, or that Albert had ever parted with the note. The cancellation of the mortgage of record, as to the note payable to Albert V., was, as to third persons and as to the defendants, perfect and complete at the time the defendants purchased at the sheriff's sale. The record did not show that Henry had ever satisfied his interest in the

mortgage. It only showed that there was recorded an absolute deed from Bergen to him for the property embraced in the mortgage.

With this brief statement of the facts, I will first discuss this branch of the case, on the fact found by the referee, that Bergen falsely represented to Henry that there were no liens on the premises, and on the assumption that the latter had no knowledge of the existence of the defendant's judgment at the time he accepted the deed from Bergen. If these were the facts, the plaintiff would have been clearly and equitably entitled, as against the defendants, to the relief sought, at any time *before* the defendants became *purchasers* under their judgments.

If a mortgagee purchases the land, and as part of the consideration, cancels the debt, without knowledge of an outstanding judgment (in other words, acting under a mistake of fact), he is entitled to protection as against judgment creditors who became such after the execution of the mortgage thus canceled, and against the subsequent mortgagees without notice, if they became such anterior to the cancellation.

A judgment creditor is not a purchaser. Neither he nor the subsequent mortgagee, in the case just supposed, part with any value or alter their position in consequence of the cancellation. Cancellation is only *prima facie* evidence of the discharge of a mortgage, and it may be proved that it was made by accident, fraud or mistake. Neither of these parties has any equity or claim, under such circumstances, to resist the older and superior equity of the first mortgagee to a restoration to his original rights. As authority for the foregoing principles, see *Welton* v. *Tizzard*, 15 Iowa, 495, and cases in this State and elsewhere, there cited, in relation to the rights of judgment creditors. *Warner* v. *Blakeman*, 36 Barb., 501; *Hyde* v. *Tanner*, 1 Barb., 75; Id., 392; *Trenton Bank Co.* v. *Woodruff*, 1 Greene Ch. R.,

117, 125; *Miller* v. *Wack*, 1 Saxton (N. J.) Ch. R., 204; *Burchard* v. *Phillips*, 11 Paige, 66.

The principle running through the whole of this class of cases is, that "when the legal rights of the parties have been changed by mistake" (or accident or fraud), "equity restores them to their former condition, when it can be done *without interfering with any new rights acquired on the faith and strength of the altered condition of the legal rights*, and without doing injustice to the rights of other persons." Per BARCULO, J., in *Barnes* v. *Cornack*, 1 Barb. S. C. R., 398. See, also, *Star* v. *Ellis*, 6 Johns. Ch., 392, 395, where Chancellor KENT says: "A court of equity will keep an incumbrance alive, or consider it extinguished, as will best serve the purposes of justice and the actual and just intention of the parties. It must, at all events, be an innocent purpose, *and injurious to no one.*" See, also, *James* v. *Johnson*, 6 Id., 424; and *S. C.*, 2 Cow., 246; *Forbes* v. *Moffatt*, 18 Ves., 384; *Nevelle* v. *Demerett*, 1 Green's Ch. R., 321.

Such would be the rights of the plaintiff if he is to be treated as having had no knowledge of the defendant's judgment at the time he accepted his deed from Bergen, and if he had applied for relief *before* the defendant's position became changed from mere judgment creditors to that of *purchasers*.

I now proceed to consider the plaintiff's rights, on the facts above supposed, he having delayed to apply for relief until after the defendants had (without notice of the plaintiff's alleged equity or right to have his contract with Bergen canceled, and his mortgage revived), become the purchasers of the premises at sheriff's sale.

It will be remembered that at the time of the sale by the sheriff, Albert had entered of record satisfaction of his interest in the mortgage. This *prima facie* canceled the mortgage as to one note. An ordinary purchaser

would have the right to treat it as thus far canceled and satisfied, and would have been to this extent protected. This will not be disputed.

If an ordinary purchaser would be thus protected, the defendants, as the sheriff's vendees, stand in my opinion upon ground equally high, and have rights equally large.

The law is, "that a purchaser at sheriff's sale, will take the land, discharged of every claim or title, whether arising under an unregistered deed, or a mere equity of which he had no notice at the time of the purchase, and which would be invalid as against an ordinary purchaser."

This is the doctrine deduced from the American cases, as laid down by Judge HARE in his note to *Bassett* v. *Nasworthy*, 2 Lead. Cas. in Eq., part 1, p. 76. And the rule applies equally where the judgment creditor is the purchaser, as where the purchase is made by a stranger. (*Waldo* v. *Russell*, 5 Mo., 387; *Ohio Life Ins. Co.* v. *Ledyard*, 8 Ala., 866; *Den* v. *Rickman*, 1 Green N. J. (Law), 43, in all of which the judgment plaintiff was the purchaser. See, also, *Orth* v. *Jennings*, 8 Blackf., 420; *Heister* v. *Fortner*, 2 Binn., 40, 45; *Mann's Appeal*, 1 Barr., 24; *Kaufflet* v. *Bower*, 7 S. & R., 64, 82; *Scribner* v. *Lockwood*, 9 Ohio, 184; *Jackson* v. *Post*, 15 Wend., 588, reviewing and explaining former cases in 4 Cow., 599, and 9 Cow., 120; *Jackson* v. *DuBois*, 4 Johns., 216.)

In this last case it was held that a mortgage not registered has priority over a judgment docketed subsequently, which is the doctrine in this State also. *Norton* v. *Williams*, 9 Iowa, 528; 10 Id., 353; 11 Id., 174; *Welton* v. *Tizzard*, *supra*. SPENCER, J., remarks: "The judgment being by act of law, does not destroy the *lien* acquired by the unregistered mortgage, nor gain a preference over it. Should the mortgagee permit a sale to take place prior to the registry, then, in my opinion, the vendee of the sheriff would

be protected from the mortgage, and it would lose its priority." 4 Johns., 216.

In view of these authorities I cannot deem the majority opinion a true exposition of the law, so far as that opinion holds that equities between Vannice and Bergen will follow the land into the hands of the defendants, after they have become the purchasers of the land, without notice of those equities.

Such a rule tends to shake and unsettle the security which the law attaches to titles *bona fide*, derived by purchasers at sheriff's sales. It is admitted that the defendants purchased *bona fide*, and without notice of the equities with which they are now sought to be charged. They are, in my opinion, entitled to the same protection, and stand as free from equities, of which they had no notice, as if they were ordinary purchasers. And their rights can no more be cut down by a court of equity, than by a court of law.

The equities of the plaintiffs are not so strong as would be the equities in favor of a person who had an unrecorded deed, or who had fully paid for land without getting a deed; and I can scarcely think that the equities of such a person should be allowed to prevail against the *bona fide* purchaser of the land at sheriff's sale.

It follows that the defendants, as the sheriff's purchasers (no notice of the plaintiff's equities having been brought home to them prior to the sale by the sheriff), are clearly entitled to hold the land, discharged of any lien of the mortgage, so far as it secured the note to Albert V. Vannice, he having discharged his mortgage of record, prior to the sale by the sheriff.

But, under the view in which I am now considering the case (viz., that the plaintiff had no knowledge of the defendant's judgment, when he accepted his deed from

Bergen), a different result is reached, as to the other note which was payable to Henry Vannice.

No satisfaction of record was entered by him. His mortgage remained uncanceled, so far as the record disclosed to the defendant.

The record only showed that Bergen had conveyed his equity of redemption to Henry. It did not show whether Henry had taken this conveyance as additional security for his mortgage debt, or in satisfaction of it. As the mortgage was not satisfied of record by Henry, the inference would, perhaps, be, that he had taken the legal title with no intention to extinguish his mortgage. See, as to merger, and effect thereof, *Wickersham* v. *Reeves*, 1 Iowa, 413; *Wilhelmi* v. *Leonard*, 13 Id., 330; *White* v. *Hampton*, Id., 259.

At all events, the mortgage remaining unsatisfied of record, as to Henry's interest, would be notice to defendants of any rights or equities which Henry might be able to set up thereunder, as against the mortgagor. To this effect are the cases of *Bolles* v. *Chaunsey*, 8 Conn., 389; *Hayden* v. *Burney*, 7 Vermont, 493; and see Am. Law. Reg., Nov., 1862, p. 7, and cases; *Brinckerhoff* v. *Lansing*, 4 Johns. Ch., 65; *Heard* v. *Evans*, 1 Freem. Ch., 79; *Packard* v. *Kingman*, 11 Iowa, 219; *Williamson* v. *Brown*, 15 N. Y., 354, 359 (1857), containing latest New York doctrine as to notice.

Or, if it would not amount to notice, yet such a record remaining unsatisfied, would be sufficient to put defendants upon inquiry as to the interest or rights of Henry. If they did not wish to be affected by it, they ought to have made inquiry, and if they had made such inquiry, they would have become advised of his equities. Under the authorities above cited, defendants are not to be considered as purchasers, without notice as to the note payable to Henry, and as to which the mortgage had not been canceled of

record. It is my opinion that the mortgage should be revived only, so far as this note is concerned.