LINDLEY v. MAYS.

1. **Title to Land**: SHERIFF'S DEED DELAYED: INTERMEDIATE PUR-
CHASE: RIGHTS OF PARTIES. One who is entitled to a sheriff's deed
for land sold on execution should procure his deed and place it on
record within twenty days after the date when he becomes entitled to it,
in order preserve notice of his rights as against intermediate purchasers
from the judgment debtor; (Code, § 3125;) but a failure to do so does not
invalidate his deed, when procured, as against an intermediate purchaser
from one who did not have the record title to the land. In this case the
sale was upon a mortgage foreclosure. The mortgagee bid off the prop-
erty, and assigned his certificate of purchase to plaintiff as collateral
security. Plaintiff delayed for more than twenty days after the expira-
tion of the year for redemption to obtain his sheriff's deed, and between
the expiration of the twenty days and the filing of the deed the mort-
gagee, having no legal title, deeded the property to the defendant, with
covenants of warranty, to secure a debt to the defendant. *Held* that
plaintiff's sheriff's deed was good as against defendant, notwithstanding
his delay in procuring and filing it.

*Appeal from Mahaska Circuit Court.*

WEDNESDAY, JUNE 3.

THIS is an action in equity involving the title to certain
real estate in the city of Oskaloosa. There was a trial to
the court, and a decree for the plaintiff. Defendant appeals.

*G. W. Lafferty*, for appellant.

*W. R. Lacey* and *John F. Lacey*, for appellee.

ROTHROCK, J.—I. The following facts material to the case
are not in dispute: In October, 1877, G. H. Baugh was the
owner of the property in controversy. He sold and conveyed
it by deed to one Eby, who executed to Baugh a mortgage on
the property for purchase money. The deed and mortgage
were duly recorded. The mortgage being unpaid, Baugh
foreclosed the same, and recovered a judgment and decree of
foreclosure in October, 1877, for $1,150 debt, and $61.45

costs. On the twenty-second day of March, 1878, the property was sold on special execution issued upon said foreclosure, and purchased by Baugh for the sum of $1,100, and a sheriff's certificate of sale was duly issued to Baugh; the said property having been sold subject to redemption. Eby did not at any time redeem from the sale. Some time after the sale of the property, Baugh assigned the certificate of purchase to the plaintiff herein. The assignment was a full assignment in writing on the back of the certificate, and the certificate was delivered to the plaintiff. Baugh was at that time indebted to the plaintiff in quite a large amount, and the assignment of the certificate was intended by the parties as collateral security. The certificate remained in possession of the plaintiff until April 30, 1880, at which time the sheriff executed a deed of the property to the plaintiff, which deed was filed for record May 1, 1880. Baugh became insolvent, and was indebted to the defendant in a sum about equal to or greater than the value of the property. On the fourteenth of April, 1880, he executed to the defendant a deed of the property, with covenants of general warranty. This deed was intended by the parties as security for the debt from Baugh to the defendant.

The above facts show the claims of the respective parties to the property, so far as appears of record. It will be observed that the sheriff's deed was made to the plaintiff more than twenty days after the time for redemption expired. And the deed from Baugh to the defendant was executed and delivered before the plaintiff received his deed from the sheriff. It cannot be doubted that, by reason of the assignment of the certificate of sale, it was the right of the plaintiff, at the expiration of the period of redemption, to demand a sheriff's deed. And the deed thus made would have conveyed a perfect title as against all the world, unless possibly Baugh would have had a right to redeem the property from the plaintiff by paying off his indebtedness. Did the delay in taking the deed for more than a year and twenty days

divest the plaintiff of any right, as against Baugh and the defendant? We think it did not. It is provided by statute that " the purchaser of real estate at a sale on execution need not place any evidence of his purchase upon record until twenty days after the expiration of the full time of redemption. Up to that time the publicity of the proceedings is constructive notice of the rights of the purchaser, but no longer." Code, § 3125.

If the defendant had taken his deed from Eby, the former owner, he might possibly make some claim to the property under this provision of the statute. But in that case his claim would be based upon the ground that the sheriff's sale was void as to him, because of the lapse of time and want of notice. His position in the case at bar is that the sale was valid, and that Baugh had the right to convey to him. It is evident, however, that Baugh had neither title nor the right to assert any title or interest in the property when he executed his deed to the defendant, and the defendant was bound to take notice of the record. An examination would have shown him that the title was in Eby; that there had been a sheriff's sale, and Baugh was the purchaser, and the time for redemption had expired. If he had desired to obtain the title, he would have at once suggested to Baugh that it would be advisable to procure it through the sheriff.

We do not regard the discussion of counsel as to the rights of junior and subsequent lien-holders as at all pertinent to the case, because there is no claim made by the defendant that he has a right to redeem. He don't demand it, as we suppose, for the very good reason that the indebtedness from Baugh to the plaintiff far exceeds the value of the property.

II. It is claimed by the defendant, however, that by an arrangement between Baugh and the plaintiff, by which Baugh gave the plaintiff additional collaterals, the plaintiff agreed to surrender all claim under the certificate of purchase. And the further claim is made that, after the sheriff's deed was executed to the plaintiff, Baugh conveyed to the plaintiff

certain land in Dakota, and that the consideration for said land was that plaintiff should execute a quit-claim deed to the defendant for the property in controversy. Upon these questions there is a conflict in the evidence. The burden was on the defendant to establish the facts above set out by a preponderance of the evidence, and in our opinion he failed to do so. Upon the latter proposition the defendant presented a majority of witnesses. But the acts of the parties, and the motives which it is alleged induced the change of the securities, rebut the claim made by the defendant. At the interview at which it is claimed this new agreement was made, the plaintiff was insisting on additional security. He knew nothing about the Dakota land, and it was, to say the least, of no more value than the property in controversy. It was in a distant part of the country, and there was no motive to make the change. Further, it appears from the testimony of the defendant's witnesses that the conveyance of the Dakota land was dependant upon the release of the property in controversy, and one of the witnesses who testified to the agreement, and who was Baugh's agent and attorney, delivered a deed of the Dakota land to the plaintiff on the same day it is claimed the agreement was made, without demanding a release of the property in controversy. These circumstances go very far to corroborate the evidence introduced by the plaintiff, that he was to have the Dakota land as additional security, without surrendering the property in controversy. We must not be expected to review and discuss the testimony of the witnesses.

Our conclusion is that the decree of the circuit court should be

AFFIRMED.