# CASES

### DECIDED IN THE

# SUPREME COURT OF GEORGIA

#### AT THE

## MARCH TERM, 1902.

---

### AUSTIN *v.* GEORGIA LOAN & TRUST COMPANY *et al.*

The payee of a promissory note, the payment of which was secured by a deed to land, transferred the note to another without making to him a conveyance of the realty. The latter obtained in a city court a common-law judgment upon the note. Thereafter the payee of the note executed, and filed in the clerk's office of the superior court of the county in which that judgment had been rendered, a deed of reconveyance to the defendant in execution, and the same was recorded. This deed recited that the maker thereof had "obtained judgment against [the grantee] in the superior court of said county, and that the deed was made for purpose of levy and sale." The sheriff then undertook to sell the land under the city-court execution. *Held*, that under the facts recited he had no authority to do so, and that the bidder to whom the land was knocked off and who received a deed from the sheriff did not get a legal title to the property.

Argued January 14, — Decided March 11, 1902.    Rehearing denied March 28, 1902.

Equitable petition.    Before Judge Lumpkin.    Fulton superior court.    June 11, 1901.

*J. D. Humphries*, for plaintiff in error.    *A. H. Davis*, contra.

LUMPKIN, P. J.    On the 1st day of May, 1891, J. L. Lane borrowed from the Georgia Loan and Trust Company the sum of five hundred dollars, giving therefor a promissory note with interest coupon notes attached, and also executing to that company a security deed to land.    Subsequently this note was by the Loan and Trust Company transferred to Stephen D. Smith.    He brought against Lane, in the city court of Atlanta, an ordinary action on this note, and, on September 19, 1893, obtained a common-law judg-

1                                        1

ment for the full amount of principal and interest due thereon.   On September 27, 1893, the Loan and Trust Company executed to Lane a quitclaim deed to the land referred to above.   This deed was filed in the office of the clerk of the superior court and recorded October 14, 1893.   It recited that "the Ga. Loan & Trust Co. obtained judgment against Lane in the superior court of said county, and that the deed was made for purpose of levy and sale."   The sheriff thereafter exposed the land for sale under the execution in favor of Smith, and it was bid off by Samuel Barnett, who was acting for the Loan and Trust Company.   The sheriff made a deed to him. Lane remained in possession of the land, and after the lapse of some years an equitable proceeding was instituted in the superior court by the Loan and Trust Company, Samuel Barnett, and Stephen D. Smith against Lane and one Charles Austin.   Before trial the action was dismissed as to Smith and proceeded in the name of the Loan and Trust Company and Barnett against the defendants.   According to the allegations of this petition, Austin was asserting title to the land under a sheriff's sale thereof which was had upon the foreclosure of a mortgage given by Lane to Mrs. Maggie Hunter and subsequently transferred to Austin.   This mortgage was dated July 31, 1891, and the sale thereunder was had after that at which Barnett became the purchaser.   The petition further alleged that Lane claimed the right to retain possession of the land as the tenant of Austin.   The prayers of the petition were, that the title to the land be decreed to be in the Loan and Trust Company; that it recover the possession thereof; that the sheriff's deed to Austin be canceled as a cloud upon its title; and that the defendants be enjoined from in any manner interfering with the property.   A trial was had, at which the facts above recited and others not now material appeared. The court directed a verdict in favor of the plaintiffs, and the defendants excepted.

It should be noted at the outset that the plaintiffs planted their right to a recovery squarely upon the sheriff's deed to Barnett, and did not assert title under the security deed made by Lane to the Loan and Trust Company.   This being so, the vital and controlling question in the case, and the one on which, in our judgment, it should be made to turn, is:   Did the deed from the sheriff to Barnett invest him with the title to the land in dispute?   Unless this question can be properly answered in the affirmative, the direction

of the verdict to which exception is taken was erroneous.　We are satisfied that Barnett did not by the sheriff's sale acquire any title whatever.　The quitclaim deed from the Loan & Trust Company to Lane purported to convey to him title to the land, not generally and for all purposes, or for the specific purpose of enabling Smith to enforce his equitable lien upon the property, but for the sole purpose of enabling the Loan and Trust Company to enforce its lien under the security deed made to it, for its exclusive benefit, by way of asserting its statutory right to reconvey to its debtor merely for the "purpose of levy and sale," under a judgment in its favor rendered against Lane in the superior court.　An examination of this quitclaim deed would not even remotely suggest to one contemplating becoming a purchaser at the sale to be had under Smith's common-law execution, issued upon a judgment against Lane rendered in the city court, that the successful bidder at that sale would get a title free from the encumbrance of the security deed which Lane had executed and delivered to the Loan and Trust Company.　On the contrary, an inspection of the quitclaim deed would most naturally lead to the inference that it was executed with the specific design of giving notice to the world that it was filed with the clerk of the superior court as a mere escrow, except for the purpose of levy and sale under a judgment of the superior court in favor of the Loan and Trust Company.　The present record does not disclose whether or not, in point of fact, any such judgment was ever rendered.　If there was no such judgment in existence, a person investigating the matter with a view to becoming a purchaser at the sheriff's sale might have ascertained the truth in this regard, but even then he would not be authorized to assume that though the Loan and Trust Company had no right to bring the land to sale for its benefit, its quitclaim deed made in pursuance of an abortive attempt to do so would operate as a reconveyance of the land to Lane for any other purpose, or divest the title of the Loan and Trust Company under its security deed.　See, in this connection, *Coleman* v. *Maclean*, 101 *Ga.* 303, and cases cited.　Certain it is that such a person would have no means of knowing that in executing the quitclaim deed the Loan and Trust Company had a secret intent to enable Smith to enforce against the land the lien of his common-law judgment.

The object of the statute in providing that the holder of a secu-

rity deed may, in order to reinvest his debtor with title for the purpose of levy and sale, execute to the latter a quitclaim deed, deposit it with the clerk of the superior court, and have the same duly recorded, is that the property levied on may be sold free from the encumbrance of the security deed and that the public may thus acquire notice that the successful bidder at the sheriff's sale will get such title as passed under that deed. The vice of a quitclaim deed like that with which we are now dealing is, that it utterly fails to accomplish this object. It not only does not inform the public of its real purpose, but actually tends to mislead by reciting that which is untrue and directly opposed to the secret intent with which it was made. The resulting mischief which must follow if such a practice were to be upheld is apparent, viz. : a sacrifice of the debtor's property by reason of the fact that the public is not informed that the purchaser at the sheriff's sale will get a good legal title. The present case itself affords an apt illustration of what has just been said; for it appears from the record that although the security deed to the Loan and Trust Company was in fact the highest lien upon the property, it was purchased by Barnett at sheriff's sale for $125, when, according to the evidence, it was worth at least $400.

Our present decision is in no way inconsistent with the principle laid down in *Scroggins* v. *Hoadley*, 56 *Ga.* 165, wherein it was held that under section 3654 of the Code of 1882, which authorized the vendor of land " to make, file, and record a deed to the vendee, and levy a judgment for the purchase-money upon the land, when only bond for titles [had] been given," the vendor could make a deed to the land and the same could be sold to satisfy a judgment rendered in favor of a transferee of the purchase-money note. It appeared in that case that the vendor, at the request of the transferee, had executed a deed " under section 3654 of the code," thus fully complying with the statutory requirement with respect to the manner in which liens on land for the purchase-money thereof might be asserted and property brought to sale for the purpose of making such liens effectual. Granting, therefore, that our present statute with regard to filing and recording deeds of reconveyance for the purpose of enforcing the collection of debts secured by deeds to land may be invoked in behalf of the transferees of such debts, it is obvious that a deed of reconveyance ex-

ecuted with that end in view must in all essential respects conform to the law and correctly recite the purpose for which it is made.

*Judgment reversed. All the Justices concurring, except Little, J., absent.*