## MADDOX *v.* ARTHUR *et al.*

1. One who buys land from another who purchased the same at a tax sale, and subsequently brings an action to recover it from a third person in possession, is not, in the event he fails to recover in such suit, entitled, either at law or in equity, to a lien upon the property for the amount of the purchase-price which he paid to the original holder of the tax title, even though the tax execution may have been a lien upon the land

2. A purchaser of land at a tax sale stands in no better position, relatively to the rights of a subsequent purchaser at a judicial sale, than if he had bought from the landowner; and if he fails to file his deed for record until after one without notice of his title has purchased the property at a valid sheriff's sale and duly recorded the sheriff's deed, he loses whatever title he may have acquired at the tax sale.

3. The transferee of a note the payment of which is, conformably to the provisions of the Civil Code, secured by a deed, can, after he has reduced the note to judgment, obtain a special lien on the land by having the holder of the legal title conveyed by the security deed to execute, file, and have recorded a reconveyance of the title to the judgment debtor, for the purpose, expressed in the deed of reconveyance, of having the land levied on and sold under the execution issuing from such judgment, and then levying his execution thereon.

Argued February 4,—Decided March 24, 1905.  Rehearing denied May 10, 1905.

Complaint for land.    Before Judge Lumpkin.    Fulton superior court.    June 4, 1904.

W. H. Terrell, for plaintiff.

Anderson & Anderson, for defendants.

FISH, P. J.    J. E. Maddox brought an action of complaint for land against John L. Arthur, to recover an improved residence lot in the City of Atlanta.    Arthur held under the Georgia Loan and Trust Company, which made itself a party defendant to the case by joining with him in the defense to the suit.    The parties claimed under a common grantor, Mary L. Hill.    The plaintiff's chain of title was as follows: deed from Mary L. Hill to Dennis O'Callaghan, dated September 15, 1891; deed from O'Callaghan to his wife, F. U. O'Callaghan, dated April 3, 1893; deed from the marshal of the City of Atlanta to the City of Atlanta, made in pursuance of a sale of the lot under a general execution issued by the city against Mrs. O'Callaghan for her city taxes for the year 1896, dated December 1, 1896, and recorded December 3, 1900; quitclaim deed from the City of Atlanta to the plaintiff, dated January 4 1898, and recorded November 3, 1900.    The chain of the Georgia Loan and Trust Company's title was as follows: Deed from Mary L. Hill to said company, to secure the payment of a debt represented by a certain promissory note and interest coupons thereto attached, made conformably to the provisions of the Civil Code applicable to such cases, dated August 1, 1891, and recorded August 21, 1891; quitclaim deed from the Georgia Loan & Trust Company to Mary L. Hill, dated June 17, 1899, and recorded July 19, 1899, showing by its recitals that it was executed, under the provisions of the Civil Code, merely for the purpose of having the land levied upon and sold under an execution issued from a judgment rendered in favor of J. M. H. Black, against Mary L Hill, upon the note secured by the deed to the Georgia Loan and Trust Company, such note having been previously transferred to him by the payee thereof; deed from the sheriff of Fulton county to the Georgia Loan and Trust Company, the purchaser of the property at the sheriff's sale under such execution, dated May 1. 1900 and recorded July 6, 1900.    An abstract of the plaintiff's title, as above indicated, was attached to his petition. The defendants, after setting up in their answer the title upon which they relied, as disclosed above, prayed that the answer might be taken in the nature of a cross-petition, and that "the title of defendants to said lands be decreed perfect as against

plaintiff; that plaintiff's alleged claim of title and all muniments thereof be cancelled as a cloud on defendant's title." After the filing of this answer and cross-petition, the plaintiff tendered and asked leave to file "an answer" thereto which was as follows: that the land was "chargeable with taxes due the City of Atlanta for the year 1896; that the City of Atlanta bought the said land at tax sale on Dec. 1st, 1896; that the city sold the same on Jan. 4th, 1898, to petitioner for $66.00; that if the court should decide that said sales did not pass the legal title to said property, petitioner insists that the city's lien for taxes was assigned to him, and that he is the legal holder of the said lien, by reason of the fact that the fi. fa. under which said sale was made was issued against said land and against the person liable to pay said taxes. Therefore petitioner says that he should be declared to hold a lien against said land for $66.00, and interest from Jan., 1898, to date at the rate of 7% per annum and that he be granted a special judgment for said amount against said land." The court refused to permit the plaintiff to so amend his pleadings, and the plaintiff excepted, pendente lite, to this ruling. Upon the trial of the case, at the conclusion of the evidence and the argument, each side moved the court to direct a verdict in its favor. The court sustained the motion of the defendant and directed the jury to find for them " and that the title to the property in dispute is good in the defendant, the Georgia Loan and Trust Company;" and a verdict was so returned by the jury. The plaintiff moved for a new trial, and his motion was overruled. He excepted, and error is assigned both upon the overruling of this motion and upon his exceptions pendente lite.

1. The court did not err in refusing to allow the amendment which the plaintiff offered to his petition. It is true that the Georgia Loan and Trust Company had asked for equitable relief, in the cancellation of the plaintiff's muniments of title, but the plaintiff was not, for this reason, entitled, in the event he failed to recover the property and the prayer of the defendant should be granted, to any lien upon the property for the amount of the consideration which he had paid to the City of Atlanta for the quitclaim deed which it executed to him. If the execution which the city issued against Mrs. O'Callaghan for taxes for the year 1896 was ever a lien upon this property, such lien was extin-

guished when the property was sold under this execution and the city became the purchaser. When the plaintiff subsequently purchased the right, if any, which the city acquired by bidding off the lot at this tax sale, he neither paid any taxes on the land nor intended to pay any. He simply took the chances of acquiring a bargain in real estate when he bought the property from the city for the sum of sixty-six dollars. He removed no city tax incumbrance from the land when he made this trade; for there was none on it at that time. Besides, he did not pray for a lien for the amount of the tax and the costs incident to the issuing and enforcement of the execution for its collection, but for a lien on the land for the amount of the purchase-price which he paid the City of Atlanta for the property, which was about three times as much as the tax and the costs arising under the execution.

2. There was no error in overruling the motion for a new trial. Irrespective of the questions which have been raised by the defendant in error, touching the legality of the tax sale, and admitting that sale to have been valid, the verdict was demanded by the evidence. The Georgia Loan and Trust Company purchased the property at a valid sheriff's sale, under an execution issued from a judgment which had become a special lien on the land, without any notice whatever, so far as the record discloses, of the alleged tax title under which the plaintiff claimed; as neither the deed executed by the marshal to the City of Atlanta in pursuance of the tax sale, nor the quitclaim deed from the city to the plaintiff, was recorded until several months after the sheriff's sale took place. The sheriff's deed to the Georgia Loan and Trust Company was recorded on July 6, 1900; while the deed from the City of Atlanta to the plaintiff was not recorded until November 3, 1900, and the deed to the city, based upon the tax sale, did not appear upon the record until December 3, 1900. It is well settled that where a sheriff's deed is duly recorded before a prior deed from the defendant in execution is filed for record, it takes precedence over the previously executed deed. *Ellis* v. *Smith,* 10 *Ga.* 253; *McCandless* v. *Inland Acid Co.,* 108 *Ga.* 618, 619; Civil Code, §§ 2778, 3618. The same rule applies in favor of a purchaser at an administrator's sale. *Tucker* v. *Harris,* 13 *Ga.* 1. It is very clear that the same principle applies in a case where the prior deed is one executed in pursuance of a sale of the land under a

tax execution.    The purchaser at the tax sale, relatively to the rights of a subsequent purchaser at sheriff's sale, stands in no better position than if he were a purchaser from the landowner; and if he fails to file his deed for record until after one without notice of his title has purchased the property at a valid sheriff's sale and duly recorded the sheriff's deed, he loses whatever title he may have acquired at the tax sale.    For, as was said by Judge Lumpkin, in *Ellis* v. *Smith*, supra, in reference to a sheriff's sale, " the effect of a sale by the law, in this respect, is just the same as if made by the individual whose agent or trustee the officer becomes to make the transfer."    The contention of counsel for plaintiff in error in reference to the alleged invalidity of the sale of the property under the execution in favor of Black is without merit. When the deed of reconveyance from the Georgia Loan and Trust Company to Mary L. Hill, the grantor in the security deed and the judgment debtor of Black, was executed, filed, and recorded, and the execution from Black's judgment was levied thereon, a special lien in his favor for the amount of this judgment attached to the land.    It was not necessary, as contended, that this special lien should appear upon the face of the judgment.    It was sufficient that the proof in the case showed it.    *Coleman* v. *Slade,* 75 *Ga.* 61; *McAlpin* v. *Bailey,* 76 *Ga.* 687 ; *Bennett* v. *McConnell,* 88 *Ga.* 177; *Marshall* v. *Charland,* 109 *Ga.* 309, 310; *Tripod Paint Co.* v. *Hamilton,* 111 *Ga.* 823.

3.  The transferee of a note the payment of which is secured by a deed, conformably to the provisions of the Civil Code, can, after he has reduced the note to judgment, obtain a special lien on the land by having the holder of the legal title conveyed by the security deed to execute, file, and have recorded a reconveyance of the title to the judgment debtor, for the purpose, expressed in the deed of reconveyance, of having the land levied upon and sold under the execution issuing from such judgment, and then levying his execution thereon.    The act of December 17, 1894 (Acts 1894, p. 100), codified in section 5432 of the Civil Code, specially provides for this.    His right to thus obtain a special lien upon the land was recognized by this court even before this act was passed.    *Henry* v. *McAllister,* 93 *Ga.* 667.    As said by Mr. Justice Cobb, in *Marshall* v. *Charland,* supra, " . . . all that is absolutely essential to the establishment of a special lien in favor

of the holder of the note the payment of which is secured by a deed is, that there shall be an execution issued upon a judgment rendered on the note, a deed from the original creditor to the defendant in fi. fa. made, filed, and recorded, and a levy upon the property therein described." The case of *Austin* v. *Georgia Loan and Trust Company,* 115 *Ga.* 1, cited by counsel for plaintiff in error, is not in conflict with the ruling in the present case. There the note secured by the deed had been transferred by the Georgia Loan and Trust Company, the payee in the note and the grantee in the security deed, to one Smith, and he had brought suit upon it against Lane, its maker and the grantor in the security deed, and obtained judgment thereon. The Georgia Loan and Trust Company had then executed a deed of reconveyance to Lane, the judgment debtor, which, instead of reciting that the note which the original deed was given to secure had been transferred to Smith and that he had obtained judgment thereon, and that the deed of reconveyance was executed for the purpose of enabling him to levy the execution issuing from such judgment on the land, recited that the Georgia Loan and Trust Company had obtained judgment against Lane and that the deed was made for the purpose of levy and sale. Lumpkin, P. J., who delivered the opinion, said: "The object of the statute in providing that the holder of a security deed may, in order to reinvest his debtor with title for the purpose of levy and sale, execute to the latter a quitclaim deed, deposit it with the clerk of the superior court, and have the same duly recorded, is that the property levied on may be sold free from the encumbrance of the security deed and that the public may thus acquire notice that the successful bidder at the sheriff's sale will get such title as passed under that deed. The vice of a quitclaim deed like that with which we are now dealing is, that it utterly fails to accomplish this object. It not only does not inform the public of its real purpose, but actually tends to mislead by reciting that which is untrue and directly opposed to the secret intention with which it was made. The resulting mischief which must follow if such a practice were upheld is apparent, viz., a sacrifice of the debtor's property by reason of the fact that the public is not informed that the purchaser at the sheriff's sale will get a good legal title." It was for these reasons that it was held that the sheriff had no author-

ity to sell the land under the execution issued upon the judgment in favor of the transferee of the note secured by the deed. In the case with which we are now dealing, the deed of reconveyance from the grantor to the grantee in the security deed expressly declared the real purpose for which it was executed; and when it was filed and recorded, everybody was put upon notice that such purpose was to have the land levied upon and sold under the judgment in favor of Black, rendered upon the note which the security deed had been executed to protect.

The judgment of the court below is

*Affirmed.    All the Justices concur.*