AUGUST L. LACOMBE

*v.*

HILDA H. HEADLEY and HAROLD W. HEADLEY.

[Decided August 30th, 1918.]

A tax collector's deed given to a purchaser at a tax sale under the Tax Adjustment act (*P. L. 1898 p. 442; 4 Comp. Stat. p. 5246*) is not invalid as against a *bona fide* purchaser from the prior owner without notice whose deed is first recorded, the tax collector's deed not being within the purview of section 54 of the act concerning conveyances. *2 Comp. Stat. p. 1553.*

On bill, &c.

*Mr. W. Eugene Turton,* for the complainant.

*Mr. Harold W. Headley,* for the defendants.

LANE, V. C.

This is a bill to quiet title. Complainant claims under a tax deed from the tax collector of Irvington, dated September 30th, 1909. A sale of the property for unpaid taxes was held on or about February 11th, 1909, under the provisions of an act entitled "An act concerning the settlement and collection of arrearages of unpaid taxes, etc., in towns, townships, boroughs and other municipalities," etc. *P. L. 1898 p. 442; 4 Comp. Stat. p. 5246.* The deed was never recorded. The defendant Hilda H. Headley claims to be a *bona fide* purchaser for value, without notice, of the lands, and derives her title through a conveyance made by the heirs of the former owner subsequent to the tax sale. Her contention is that the deed from the tax collector is void as against her under the provisions of sections 21 and 54 of the act concerning conveyances. (*2 Comp. Stat. pp. 1541 1553.*)

The question is squarely presented whether the deed from the collector given in pursuance of the Tax Adjustment act is within the purview of section 54 of the Conveyance act. Section 21 is unquestionably broad enough to permit the record of a deed given by the collector, for that deed, under the provisions of the Adjustment act, is to be proved according to law. Section 54 provides—

"Every deed or instrument of the nature or description set forth in the twenty-first section of this act shall, until duly recorded or lodged for record in the said clerk's office, be void and of no effect against subsequent judgment creditors without notice, and against all subsequent *bona fide* purchasers and mortgagees for valuable consideration, not having notice thereof, whose deed or mortgage shall have been first duly recorded."

Notwithstanding that a tax collector's deed given under the Adjustment act seems to be within the express language of the statute, I have reached the conclusion that it is not within its purview. The act under which the sale took place provides for the adjustment of the tax by commissioners, confirmation of their report by the circuit court, the sale of lands by public advertisement. Each stage of the proceeding is conducted with the utmost publicity. Section 6 of the act (*4 Comp. Stat. p. 5251*) provides that after the sale the collector shall execute and deliver to the purchaser a certificate of sale. Section 7, that any person having an estate in or lien upon the lands may at any time up to the expiration of six months from the date of the certificate of sale redeem the lands. Section 8, that if the lands have not been redeemed within six months the collector of taxes, at the expiration of said six months, upon the surrender of the certificate, shall execute under the seal of the town * * * attested by the clerk of the said town and proved according to law, and deliver to the purchaser a deed or conveyance for said lands in fee-simple, absolute, free and discharged from any estate in or lien upon the same in favor of any person made a party to the proceedings. The deed is made presumptive evidence of title in the grantee. After the sale the purchaser becomes the equitable owner of the property, subject only to the right of any person interested to redeem within a period of six months. He is entitled to imme-

diate possession. *4 Comp. Stat. p. 5253 § 11.* Upon the expiration of the six months' period the right of redemption of the prior owner is cut off and the prior owner has no further interest in the property. During the time after the period of redemption has expired, and prior to the delivery of the deed where the naked legal title resides may be a question, but if the naked legal title continues to reside in the prior owner, it is such a title as that, by operation of law or proceedings taken under the law, the owner has been deprived of the power to convey or otherwise deal with. The only individual who has the power to execute a document which will evidence a transfer of title is the tax collector. When he executes a deed he does not do it in the name of the prior owner but under the seal of the town. The rights of the prior owner are not cut off by the delivery of the deed but by the sale under the statute, plus the expiration of the period provided for redemption. There is no time provided in the statute within which a deed must be applied for and given. It has not been contended that if, after the sale and the expiration of the period of redemption but before the delivery of the deed, the prior owner should execute a conveyance of the property, such conveyance would be of any force or effect. How can the fact that the purchaser has received a deed which evidences his title and has withheld it from record enlarge the right of the prior owner? It is, of course, true that if the prior owner had (no tax sale intervening) voluntarily conveyed, and a *bona fide* purchaser had intervened prior to record, the first conveyance would be void as against the *bona fide* purchaser. But this is because, as to the *bona fide* purchaser, the act of the owner in divesting himself of title is considered nugatory and that the title resided in the prior owner at the time of the conveyance to the *bona fide* purchaser. Assuming that the deed of the tax collector be considered null and void, the proceedings antedating the delivery of the deed, to wit, the sale and the delivery of the tax certificate, are not affected. The right to convey the land does not revert to the prior owner. The tax collector might, I think, if the deed were lost, be obliged by *mandamus* to execute a new one. It has been so held in the case of a sheriff's deed. *MacMillan* v. *Edward, 75 N. C. 81.*

In *Glorieux* v. *Lighthipe, 88 N. J. Law 199,* the court of errors and appeals in considering the language of section 53 (that provision of the act making record notice)—*2 Comp. Stat. p. 1552*—held that the words "subsequent purchasers" referred to subsequent purchasers of the same land. I think that the words in section 54, "subsequent purchasers," must be confined to "subsequent purchasers" of the same land and of the same grantor, and that the grantor must, at the time of the making of the deed to the subsequent purchaser, have the right to make such conveyance assuming the prior unrecorded deed to be void.

A view opposite to that expressed by me has apparently been taken by the supreme court of Georgia in *Maddox* v. *Arthur, 50 S. E. Rep. 668.* The court said: "The purchaser at the tax sale, relatively to the rights of a subsequent purchaser at sheriff's sale, stands in no better position than if he were a purchaser from the landowner; and if he fails to file his deed for record until after one, without notice of his title, has purchased the property at a valid sheriff's sale, and duly recorded the sheriff's deed, he loses whatever title he may have acquired at the tax sale. For, as was said by Judge Lumpkin, in *Ellis* v. *Smith, supra,* in reference to a sheriff's sale, the effect of a sale by the law in this respect is just the same as if made by the individual whose agent or trustee the officer becomes to make the transfer."

Under the statutes of Georgia marshal's sales for taxes are held under general executions.

Inasmuch as the matter is novel in this state (I cannot find any cases whatever bearing upon the subject), and as my conclusion is opposed to the text in *17 Cyc. tit. "Executions" 347,* and several adjudicated cases, it seems necessary to make a more extended inquiry as to whether it is consistent with the purposes and history of the recording acts than would otherwise seem proper.

The justification for the legislative *fiat* that deeds not recorded should be void as against *bona fide* subsequent purchasers for value is the assumption that if deeds are recorded careful purchasers will obtain notice by a search of the record. There is nothing in the Adjustment act which requires that there should be inserted in the deed given by the tax collector the name

of the prior owner. If it were not for the use in some counties of the Luck index system a prospective purchaser, to obtain notice of tax collector's deeds, would be obliged to examine every tax collector's deed recorded, an intolerable burden. If record is to be of no substantial value, it is hard to imagine why it should be *required,* although it is quite apparent why it should be *permitted* for the purpose of perpetuating evidence and making a copy of the record evidential—this being the initial purpose of the registry acts. It was not until 1820 (section 10 of the act of 1820, *Revision of 1821 p. 747*) that an alphabetical index was provided for. *Nix. Dig. tit. "Conveyance" 144 § 21.* It was not until then that sheriff's deeds and deeds executed by other officers were referred to in anywise. That section provided

"that there should be indexed in case the deed be made by a sheriff, the name of the sheriff, and the name of the defendant or defendants mentioned in the execution, and if by executor or administrator the name of such executor or administrator and the testator or intestate; and if by attorney or attorneys, the name of such attorney or attorneys and his or their constituents; and if by commissioners under a law of this state, or appointed by order of any of the courts of this state, the name of such commissioners and the name of the person whose estate has been conveyed."

No provision has been made for an alphabetical index with respect to tax collectors' deeds.

It was not until 1864, laws of 1864, page 498, that provision was made requiring that sheriff's deeds should be executed in such manner as that they might be recorded. That section provided for the familiar affidavit as to the method of sale, and that upon the conveyance being approved by the court it might be recorded as if duly acknowledged, and further that such conveyance or the record thereof or a certified copy of the record should be evidence of a good and valid sale, and the conveyance of said land and real estate as if the same had been reported to and approved by the court in pursuance of whose decree, judgment, execution or order the same was made.

Upon sale, under execution (*Pat. L. (1799) 371 § 12*), the sheriff was directed to give a deed which should be

"as good and sufficient a deed or conveyance for the lands as the person against whom the said writ or writs of execution were issued might or could have made for the same at or before the time of rendering judgment against him or her; * * *."

So with respect to auditors' deeds. *Pat. L. 300* § *23.* So with respect to executors' and administrators' deeds on sale of lands to pay debts. *Pat. L. 373* § *22.* The law as it existed at the time of *Nix. Dig.* provided (page 854, section 11) that upon the happening of certain contingencies the succeeding sheriff should

"sign, seal and deliver to the said purchaser * * * a deed * * *; which deed * * * shall have the same force and effect as if the sheriff who made the sale had signed, sealed and delivered a deed of conveyance for the same in due form of law."

There was no requirement of acknowledgment.

The title of the act of 1864, referring to sheriff's deeds, is "An act for the better security of titles to land sold by sheriffs and other officers." It provides in its second section that the deed and the record thereof, or a certified copy of such record, shall be good and sufficient *prima facie* evidence of the truth of the recitals in the said deed or conveyance contained. It is significant that this is an independent act and was passed for the purpose of perpetuating evidence. There is no intimation that at that time it was considered that there was any requirement that sheriffs' deeds should be recorded.

Since it has been permissible to transmit title of real property by deed there has always been recognized a distinction between the formalities which are necessary where the conveyance is made by the grantor voluntarily and where it is made by an officer of the law. See *Kent's Com. 446*, lecture 57 and notes (revised edition) by William M. Lacey, 1889, volume 4, page 472, notes.

The initial purpose of the recording statutes was to perpetuate documents and to make the records and copies thereof evidence. As early as the days of Queen Anne, chapter 19 of the 13th of Anne, Nevill, page 37, it was provided, section 7, that exemplification of deeds, &c., proved and certified in a certain manner, and any of the public books of records of the province should be

received in evidence. In 1713 or 1714 an act was passed, section 1 of which provided that all deeds, conveyances and evidences of land should be acknowledged by the grantor, or proved before an officer designated. The act provided that the record should be evidence but did not provide a penalty for non-recording. *Allis. L. 33.* This act was annulled in 1721. It was re-enacted in substantially the same form and again annulled in 1731. *Allis. L. 80.* In 1743 (*Allis. L. 132*) an act was passed permitting deeds acknowledged or proved in a certain manner to be recorded, the record was made evidence, but there was no provision with respect to a penalty for failure to record. This provision was first introduced in the law, so far as I can ascertain, by the act of 1799. *Pat. L. 399 § 8.* It provided that

"every deed * * * shall be void and of no effect against a *bona fide* purchaser or mortgagee, for a valuable consideration, not having notice thereof unless such deed * * * shall be acknowledged * * * and be lodged within six calendar months * * * to be recorded."

The act also provided that the record should be evidence. The section with respect to acknowledgment and record is permissive only. The time to record was cut down to fifteen days by the act of 1820, Revision of 1821, page 747, section 1. The Revision of 1846 made no changes bearing upon the situation. *Nix. Dig. tit. "Conveyance" 144 § 18.* The Conveyance act was revised in 1874. *Rev. 151.* By section 13 it was provided that no deed unless acknowledged or proved according to law should be recorded. Section 14 provided that any deed not acknowledged, proved, recorded or lodged for record within fifteen days after its execution should be void as against subsequent purchasers. Section 33 provided for an alphabetical index. Subsequently, an act was passed omitting the provision for fiffteen days. In 1898 the act was again revised. *P. L. 1898 p. 670.* Section 21 permitted the acknowledgment or proving and recording of all conveyances affecting lands. Section 53 provided for the effect of such record as notice. Section 54 provided for the effect of their non-record as against subsequent purchasers. Section 52 contained a provision that no deed or instrument unless acknowledged or proved and certified in the manner thereinabove di-

rected should be recorded. It will be at once observed that it might well be claimed that the effect of section 52 was to repeal by implication the provisions of the act of 1864, providing for the method of execution of sheriffs' deeds. This was remedied by an act of 1904 (*P. L. 1904 p. 70*); section 52 was amended to except conveyances by a sheriff or other officer or auditors in attachment in pursuance of a decree, judgment or execution or order of a court which it was provided might be recorded as theretofore. Section 2 of the act of 1904 validated the record of conveyances made by sheriffs and other officers if they had been executed as in the thirteenth section of the act relative to sales of land under public statute (*Rev. of 1874*) provided for. The history of this legislation demonstrates that its original purpose was to perpetuate evidence. Hence, acknowledgment or proof and record were made permissive. The second purpose which was sought to be achieved was the protection of *bona fide* purchasers for value without notice. Since Paterson's laws the permissive and mandatory features of the act have existed side by side, but, in construing the act as it now reads, consideration must be given to its double purpose. It is inconceivable to me that from 1799 and up until 1821 it should have been considered that sheriffs' deeds and the like were within the purview of the statute. There was no provision requiring that such deeds should be acknowledged so that they might be recorded, and to make their record efficacious it would, as I have before indicated, necessitate an examination by a prospective purchaser of every sheriff's deed. Nor do I think the fact that the legislature in 1820 provided for an alphabetical index and directed that so far as sheriffs' deeds and those of certain enumerated officers were concerned, the names of the prior owners of the property should be indexed, enlarged the scope of the act. Sheriffs' deeds, if acknowledged, might, at the option of the holder, be recorded so that title deeds might be perpetuated. There was still no mandate requiring the sheriff to acknowledge. In the act permitting a deed to be given by a succeeding sheriff, the words used are that he shall sign, seal and deliver. Nor do I think that the act of 1864 (*P. L. 1864 p. 498*), providing for the approval of sheriffs' deeds and the record thereof, enlarged the scope of the

penalizing section of the recording act. Its purpose was merely to compel the sheriff to deliver a deed which might be recorded so that the purchaser might perpetuate his evidence of title. Nor do I think that the change in the phraseology of the penalizing section, so that it now specifically refers to the instruments enumerated in section 21, has enlarged its scope so far as this particular phase of the subject is concerned.

The words used in Paterson's laws could not be broader. They refer to every deed or conveyance of land, tenements or hereditaments. If a sheriff's or tax collector's deed were not within the purview of the section prior to the change in phraseology, I do not think that they are now. I have already pointed out that if it be held that tax collectors' deeds be within the purview of the act, then if a prospective purchaser sought to obtain actual notice of a tax collector's deed, it would be necessary for him, so far as any provision of the act is concerned, to examine every tax collector's deed that had ever been recorded in the county. It would also result in this, that although the purchaser is absolutely protected up to the time of obtaining his deed, yet the instant after he obtains it, the prior owner may sell to a *bona fide* purchaser for value, and if the *bona fide* purchaser for value reaches the court house first his right takes precedence.

Some of the states by legislation specifically require the recording of tax collectors' and sheriffs' deeds, and generally the acts give a certain length of time within which the instruments may be recorded. *Lindley v. Mays, 23 N. W. Rep. 660; 66 Iowa 265; Littlefield v. Prince (Supreme Judicial Court of Maine), 52 Ill. Rep. 1010; Humphrey v. Yost (Court of Appeals of Kansas), 62 Pac. Rep. 550; Sintes v. Barber, 78 Miss. 585; 29 So. Rep. 403; Scott v. Conrad (Court of Appeals of Colorado), 135 Pac. Rep. 135.*

The court, in *Pollard v. Cocke, 19 Ala. 188,* held that marshals' or sheriffs' deeds were within the recording act. The court said: "But it is argued that there is no statute in this state requiring marshals' or sheriffs' deeds to be recorded. The statute is general and we see no reason for exempting them from its operation. They certainly fall as much within the mischief intended to be remedied as other absolute deeds for lands sold at

public auction. Under statutes of other states requiring regis-
tration of deeds generally they have been held to be embraced.
*Massey* v. *Thompson, 2 Nott. & M. 104; Scribner's Lessee* v.
*Lockwood, 9 Ohio 184.*"

An examination of the opinion in *Scribner's Lessee* v. *Lock-
wood* discloses that is not an authority for the position taken by
the Alabama court. In the Ohio case it was held that where a
person conveys land, which is afterwards taken in execution, sold,
the sale confirmed and deed ordered, before the first deed is re-
corded, the purchaser at the sheriff's sale is regarded a *bona fide*
purchaser from the time of sale, and protected as such, though
the first deed be recorded after the confirmation of sale, but be-
fore sheriff's deed is made. The court said: "The plaintiff con-
tends that inasmuch as his deed was recorded before the execu-
tion and delivery of a deed by the sheriff, that the common
principle of law, that notice received any time before the con-
veyance, as well as before the payment of the purchase-money,
has a direct application, and that its effect is, to put aside the
title of the defendant; and this would, undoubtedly, be true, as
I before said, if the analogy between a sheriff's deed and a deed
from a private individual was perfect throughout. It is a very
common error, where there is a general resemblance between two
things, so as to subject them in some measure to one common
law, to suppose that this law is of universal applicability, and
that it furnishes the governing rule where the resemblance fails
as well as where it is preserved. The various steps of the process
through which a judicial sale is perfected, are something very
different from what takes place in a private sale. * * * It is
much more reasonable in the present instance to say that where
a person has purchased at sheriff's sale, has paid the whole con-
sideration money, obtained a confirmation of the same, and an
order for a deed, that these steps not only constitute so many
acts of public notoriety, but that they also contribute so com-
pletely to identify the land and consummate the sale, that he
whose title is perfect up to this period, shall not be disturbed in
consequence of the registry of another and before his own is
actually delivered; that he is in truth a purchaser without notice
and that the registry of the other deed before he receives his own

conveyance would be a circumstance of the greatest importance if both deeds were private conveyances, is in reality of no moment in his case."

In *Fernyhough* v. *Rockwell* (*Supreme Court of South Dakota*), *139 N. W. Rep. 790,* the court said: "Section 2216, Pol. code, throws additional light on this subject. It provides that when a tax deed is issued, the certificate of sale must be canceled and filed away. It is our opinion, therefore, that when the tax deed was issued, the tax sale became canceled. Until the sale, the treasurer's duplicate tax list imparted notice of the unpaid tax. After the tax sale, the treasurer's sale book, together with the annotation on the subsequent tax list and tax receipts, imparted notice of the sale. When the tax deed, whether valid or void, was issued, the sale book no longer imparted notice of the sale, and there was no longer any duty on the treasurer's part to note such sale on subsequent tax lists or tax receipts. The holder of the tax deed then stood in the same position as the holder of any other kind of deed, viz., in order to have surely protected his rights, he should have recorded his deed."

There is no provision in our Adjustment act as to filing away the tax certificate, &c., as in the South Dakota statute. If the tax books are marked "paid" it is not necessarily when the deed is delivered. It may be any time after the purchase price of the land is paid. If the records in the tax office can be considered as notice before the delivery of the deed, I can conceive of no good reason why they should not be so considered after delivery. The fact that in the instant case the books were not so kept as to impart actual notice cannot alter the general rule.

I have examined the cases cited as authority by the court in support of its conclusion and find none that fully support it, except, perhaps, *Maddox* v. *Arthur* (*Supreme Court of Georgia*), *50 S. E. Rep. 668.* I have examined likewise all the cases which are cited in *Cyc.* as authority for its general statement of the rule, and there are none which I am willing to follow which sustain it in the broad terms in which it is stated.

In two early cases, two courts of equal repute, apparently took divergent views:

In *Jackson, ex dem. Merrit* v. *Terry, 13 Johns. 471*, in 1816 the supreme court of New York decided, under an act providing that all deeds or conveyances of, or concerning, or whereby any of the said lands may be anyway affected, in law or equity, shall be recorded, and that every deed or conveyance of such land shall be adjudged fraudulent and void against any subsequent purchaser for valuable consideration, unless the same be recorded before the recording of the deed or conveyance under which such subsequent purchaser shall claim, that a sheriff's deed must be recorded. The court considered that the object of the statute was to enable purchasers to ascertain the validity of title, and to determine whether they could purchase with safety, and that the law referred them to the record for this purpose, that if the sheriff's sale is to defeat the purchaser, he would in vain seek for the evidence of the title. The court said: "Upon the whole, therefore, we think it will best comport with the reason and policy of the statute, as it certainly does with the letter, to extend it to sheriffs' deeds as well as to others."

In *Houghton* v. *Bartholomew, 10 Metc. 138*, the supreme judicial court of Massachusetts, in considering their statute of 1783, which provided that deeds not recorded should only avail, as between the grantor and his heirs, said: "Of all cases arising under the Registry law, that of a sheriff's deed, upon a sale of an equity of redemption, would seem to be the last which requires a rigid construction of the Registry law. Ordinary deeds are, in a good degree, private conveyances, and the transactions may be entirely unknown beyond the grantor and grantee. A levy of execution on real estate by appraisement is comparatively a private transaction; no public notice being given; and the proceeding being such as may take place remote from the public eye. But not so in the case of an equity of redemption, on execution, by an officer. Such sale cannot take place unless there shall have been public notice, both by publishing in a newspaper and by posting up notices in public places; and the sale is at public auction. Such, indeed, were the circumstances of publicity attending such sales, that it had come to be doubted whether any registry was necessary of the deed from the sheriff to the purchaser of the equity. It was this very doubt that furnished the

leading object for this new enactment, continued in *Rev. Stat. ch. 73 § 33*, requiring such deeds to be recorded in three months, and this with a view to the protection of a *bona fide* purchaser. It was therefore made the subject of a positive enactment. The court cites with approval the rule laid down by the supreme court of New York in *Jackson* v. *West, 10 Johns. 466,* that "courts are to construe the Registry act not so literally as to work injustice, but so liberally as to prevent the mischief and advance the remedy."

I think that the doubt expressed by the Massachusetts court indicates the true rule.

In *Goodman* v. *Sanger (1879), 91 Pa. St. 71,* the supreme court of Pennsylvania held that a deed made by a treasurer to commissioners of a county for lands sold for taxes is not void as against a subsequent purchaser from the former owner of the land. The court approved *Seechrist* v. *Baskin, 7 W. & S. 403,* in which case it had been held that sheriffs' deeds were not within the purview of the statute.

The court said, "Since the decision in *Seechrist* v. *Baskin,* the acts of 1846 (*P. L. 1846 p. 124; P. L. 1849 p. 344*) authorize deeds of sheriffs, treasurers and county commissioners to be recorded in the office of the recorder of deeds in the county where the lands lie; and the records thereof, or duly-certified copies, shall be evidence where the original deeds would be. These acts appear to be solely for preservation of the deeds and making exemplifications evidence; they dispense with no proofs previously necessary to support the deeds. Nor is it their purpose to make the respective records notice of a sheriff's sale, or of a sale for taxes."

The supreme court of appeals of West Virginia, in *Wildell Lumber Co.* v. *Turk et al., 83 S. E. Rep. 83,* held that their recording act applied to deeds made by court commissioners in the execution of decrees of sale of forfeited and delinquent lands, but it is significant that their Registry act required every deed, without exception, to be proved, acknowledged or certified according to law. Our registry acts do not, except in certain instances, require deeds to be acknowledged or proved, but merely permit them to be.

It is significant that the two earlier acts which did not receive the assent of the crown (*Allis. L. 33, 80*) required acknowledgment, whereas the act passed in 1743 (*Allis. L. 132*), which received the royal assent, was in the permissive form.

I am convinced that it was not within the intent of the legislature to vitiate unrecorded sheriffs' and tax collectors' deeds as against purchasers from former owners for value without notice; that until 1864 it was fully recognized that sheriffs' deeds need not be acknowledged or proved so that they might be recorded.

There appears to be no case in this state in which the question has arisen. It may be that this is so because sheriffs' deeds were so clearly within the wording of the statute that no one thought to raise the question, but it seems to me almost inconceivable that if sheriffs' deeds were considered to be within the statute, a dispute should not have arisen during the long space of time that the registry acts have been in effect which would involve the rights of a holder of a sheriff's deed and a *bona fide* purchaser for value from a former owner.

It seems to me that if the legislature had intended that deeds of this nature should be within the purview of the statute, it would have, as most of the other states have, provided for a certain length of time in which such deeds might be recorded.

In the General Tax act of 1903 there is a distinct provision for the record of certificates of tax sales, &c. There is no such provision in the Tax Adjustment act.

The logical reasoning which underlies my conclusion that a tax collector's deed is not within the purview of the fifty-fourth section of the statute, as I stated at the outset of this opinion, is, that even assuming it to be void, the prior owner still has no right to convey, his rights are cut off not by the delivery of the deed but by operation of law.

I will advise a decree in accordance with this opinion. Settle decree on three days' notice.